298 So.2d 616

**Leonard Ray WILSON, Sr.**

v.

**Peggy Dickerson WILSON (York).**

**Civ. 164.**

Court of Civil Appeals of Alabama.

Sept. 28, 1973.

Rehearing Denied Oct. 24, 1973.

Corretti, Newsom, Rogers, May & Calton, Birmingham, for appellee-respondent.

Palmer W. Norris, Gardendale, Fred Blanton, Birmingham, for appellant-petitioner.

BRADLEY, Judge.

The parties to the proceedings in this court were divorced by a final decree of the Walker County Circuit Court, in Equity, on December 9, 1970. In that decree the wife, Peggy Wilson, was granted a divorce, custody of the minor child, and $50 per month for the support of this child. The support award would be increased to $100 per month upon the delivery of the child she was then carrying. The husband, Leonard Wilson, was further ordered to pay the reasonable medical expenses incurred in the birth of the unborn child. He was also ordered to maintain in force and effect a medical policy for the children.

The husband was also ordered to deliver to the wife the following items of personal property, except that the washer and dryer would be picked up by the wife:

Washing machine
Clothes dryer
Barbecue grill—portable
Baby stroller
Wall mirror from guest bedroom

The husband was given child visitation rights as follows: he was to pick up the child promptly at 6:00 p. m. on Friday eve-

ning and return the child promptly at 6:00 p. m. Sunday evening. This custody shall be exercised on the second and fourth weekends of each month beginning on December 11, 1970. The husband was also allowed visitation for two days at Thanksgiving and the Fourth of July of each year. The time limits would also apply at these times. During the summer of each year, the father would have the child from June 1st to June 15th and August 1st to August 15th with the time limits previously mentioned applying.

On March 9, 1972 Peggy Wilson filed a petition asking the court to issue the rule nisi to require Leonard Wilson to show cause, if any he had, why he should not be held in contempt for his failure to comply with the directives of the court set out in the divorce decree of December 9, 1970. These directives are as follows:

Leonard Wilson was required to:

(1) pay the reasonable medical expenses in connection with the birth of the then unborn child of the parties;

(2) maintain in full force and effect medical insurance for the children of the marriage;

(3) deliver possession of the following items of personal property to the wife:

Washing machine
Clothes dryer
Barbecue grill—portable
Baby stroller
Wall mirror from guest bedroom

(4) *promptly* pick up the child at 6:00 p. m. on Fridays and return him *promptly* at 6:00 p. m. on Sundays on the weekends when he has visitation rights;

(5) make the support payments on the first of each month.

The rule nisi was issued to Leonard Wilson and upon receipt of his answer a hearing was held thereon. Subsequent to the hearing, the court rendered a decree in which it found that Wilson had the means to comply with the directives of the origi-

nal divorce decree and had "willfully and contemptuously refused to abide" by them; hence, he was in contempt. The trial court then said that he could purge himself of the contempt by doing the following within forty-five days:

1. Pay to University Hospital in Birmingham $928; pay to Dr. Walter P. Batson $275; pay to Dr. Steven D. Palmer $25; pay to A & A Ambulance Service, Inc. $35; pay to South Highlands Infirmary in Birmingham $174.30.

2. Pay to Peggy Wilson $150 in lieu of the washer and dryer located in his home.

3. Deliver to Peggy Wilson a two by three foot distortion-free mirror of good quality.

4. Promptly pick up and deliver his child between 6 and 7 p. m. on Friday and Sunday evenings under the same terms as previously decreed.

5. Pay child support payments to the register of said court by the fifth day of each month.

The decree also required the payment by Wilson of reasonable attorney's fees in the amount of $250.

Within fifteen days of the above decree the trial court changed the above decree to allow Leonard Wilson increased visitation privileges with his child.

Leonard Wilson then asked for a rehearing of the contempt decree, as did Peggy Wilson, and after a hearing thereon, the court entered a decree in which it denied the rehearing except as to the following, which was a modification of the June 14, 1972 decree in that respect:

1. No money is required to be paid to Dr. Palmer or to A & A Ambulance Service, Inc.; however, Leonard Wilson is required to pay to Mildred Dickerson, the mother of Peggy Wilson, $145.75, and to pay to Peggy Wilson the sums of $25.00 and $35.00.

Leonard Wilson on September 15, 1972 filed notice of appeal to this court from the contempt order of June 14, 1972 and the modification order of August 15, 1972. That appeal was dismissed by this court for want of prosecution. On February 13, 1973 Leonard Wilson filed a second appeal from the June 14, 1972 and August 15, 1972 decrees.

Then on June 11, 1973 Wilson petitioned this court to issue the writ of certiorari for the purpose of reviewing the contempt order of June 14, 1972 and August 15, 1972. Peggy Wilson, on June 21, 1973 filed here a motion to dismiss the petition for the writ of certiorari.

Submission of this case, after oral argument, was taken on the motions to dismiss the appeal and the writ of certiorari, the writ of certiorari and the appeal.

■ We shall consider the motion to dismiss the appeal first.

Appellee-respondent, Peggy Wilson, says that appellant-petitioner's first appeal was dismissed by this court for lack of prosecution and he should not be allowed to appeal a second time.

The first appeal—Civ. 101—was dismissed by this court for failure to comply with certain requirements relating to the record, i. e., no transcript of the evidence was on file in this court at the time of the dismissal. There being a dismissal of the appeal for the failure to complete the record means that the merits of the controversy were never considered.

Our Supreme Court has held that where an appeal has been dismissed for the failure to present it properly, the effect is the same as if no appeal had been taken. Federal Deposit Ins. Corp. v. Equitable Life Assur. Soc. of U. S., 289 Ala. 192, 266 So. 2d 752. So in the instant case, the dismissal of the appeal amounted to no appeal having been taken.

The second appeal being taken within the time allowed for an appeal in this type of case, we perceive of no valid reason why this appeal should not be considered. The motion to dismiss the appeal is, therefore, denied.

■ Appellee-respondent contends that the motion to dismiss the petition for the writ of certiorari should be granted mainly because the grounds for the writ are essentially the same as those for reversing the decree of the trial court on the appeal, and since the appeal cannot lie, neither can the writ of certiorari.

The petition for the writ of certiorari was filed in this court prior to submission and questioned the contempt citation.

In Lovelady v. Lovelady, 281 Ala. 642, 206 So.2d 886, the Supreme Court said the proper method for a review of a contempt citation is by way of certiorari.

Certiorari being the proper way to review a contempt citation, the motion to dismiss the writ is denied.

Appellant-petitioner says that he appealed from the June 14, 1972 and August 15, 1972 decrees because they were not contempt decrees but were modification decrees of the original divorce decree rendered on December 9, 1970. Submission here was taken on the appeal and the writ of certiorari.

Appellant-petitioner assigned six errors allegedly committed by the trial court, the first three of which contend that the contempt decree was not supported by the evidence and that appellant was unable to comply with the original decree.

Before we undertake a decision of these assignments of error, it is necessary that we first decide whether or not the decrees of June 14 and August 15 are contempt decrees or modification decrees.

That aspect of the June 14, 1972 decree relating to the times of visitation and payment of support to the register did result in a change in the December 9, 1970 decree. The December decree provided that the appellant-petitioner would pick up his child from the appellee-respondent *prompt-*

*ly* at 6:00 p. m. on Friday evening and return him *promptly* at 6:00 p. m. on Sunday evening two weekends out of each month. The June 14 decree altered that time schedule so as to permit appellant to pick up and return the child between 6:00 and 7:00 p. m. on Fridays and Sundays.

The December decree also required appellant to pay the support money to the register of the court on the first of each month; the June decree changed or altered this payment time to the fifth of each month.

■■ These directives relate to custody and child support and are modifiable by a court upon proof of changed circumstances. Easterling v. Caton, 260 Ala. 543, 71 So.2d 835. In the instant case the evidence is sufficient to support the court's June 14 decree making changes in the visitation and support payment schedules. Hence, that portion of the June 14 decree relating to the time of visitation and the time of child support payments amounted to a modification of the December 9 decree and was not a part of the contempt decree; therefore, said part of the June 14 decree can be reviewed by appeal.

Having concluded that the evidence fully supports this aspect of the court's June 14 decree, we find no error in it.

■ As to the remainder of the June 14 decree, i. e., the part relating to the payment of certain sums to doctors, hospitals, ambulance companies, appellee and her mother, permitting appellant to pay $150 to appellee in lieu of the delivery of the washer and dryer and directing delivery of a mirror similar to the one previously ordered, we do not consider to be a modification of the December 9 decree. This aspect of the December 9 decree is more in the nature of a property settlement. Certainly the award of the washer and dryer and mirror was a property settlement, and the award of "reasonable medical expenses" in connection with the unborn children would be a one-time expenditure. Hence, this aspect of the December 9 decree is not modifiable and would be part of the contempt order of June 14 and August 15, 1972.

The evidence in support of the rule nisi was heard ore tenus and the court concluded that appellant-petitioner had not paid the expenses connected with the birth of the children, and the evidence was ample to support this conclusion.

■ In a certiorari proceeding, any legal evidence in support of the decree of the trial court is binding on the appellate court. Lovelady v. Lovelady, *supra.*

Having determined that the evidence supported the decree of contempt, we do not consider the assignment of error relating to this aspect of the review to be valid.

Appellant-petitioner says however that he was not able to carry out the terms of the December 9 decree for the reason that he was not working and did not have sufficient assets to pay the expenses connected with the birth of the children in question. There is also legal evidence in the record to support the trial court's finding in this regard; hence no error here.

Assignments four and five suggest that the trial court erred in requiring the appellant-petitioner to pay specific sums of money to the hospitals, doctors, and to his mother-in-law—all of said sums being related to the birth of his children—for the reason that these persons were not parties to the proceedings. It is also argued under the assignments that the University Hospital, one of the persons to whom money was ordered paid, had filed a lawsuit against appellant-petitioner to collect the money owed to it, and he is being prevented from litigating the reasonableness of the charge in that action by virtue of the June 14 decree.

The tenor of appellant-petitioner's argument in support of these assignments of error is to the effect that the trial court has denied him his right to litigate the reasonableness of these charges in other ac-

tions contrary to the Constitutions of the United States and Alabama. Appellant-petitioner does not favor us with any citations of authority in support of his argument.

The trial court, after hearing the evidence ore tenus in response to a petition for the rule nisi, concluded that appellant-petitioner was in contempt of the court for the willful failure to pay the reasonable medical expenses incurred in connection with the birth of the twins subsequent to the divorce decree of December 9.

After the adjudication of contempt the trial court then said in the same decree that the appellant-petitioner could purge himself of this contempt by paying specific sums of money to the doctors who attended the children at birth, the hospitals where the birth occurred, the ambulance used to take one of the babies to another hospital for specialized treatment to save its life, to the grandmother who paid a part of a hospital bill, and to appellee-respondent for the sums she had paid to various doctors.

The decree did not state what if any penalty there would be for failure to comply with the purge directives. Appellant-petitioner argues that in the absence of a penalty, there can be no contempt citation.

We have been unable to find an Alabama case where the court adjudged the respondent in contempt and did not prescribe any punishment. However, we have several cases from other jurisdictions where the respondent has been adjudged in contempt for past omissions and has been allowed to purge himself of that contempt without any mention being made of incarceration. See National Labor Relations Board v. Rath Packing Co., 8 Cir., 130 F.2d 540; Vastola v. Vastola, 23 Misc.2d 39, 200 N.Y.S.2d 512; and Mowbray v. Mowbray, 20 Misc.2d 533, 190 N.Y.S.2d 783.

We therefore view this portion of the June 14 and August 15 decrees to be an adjudication of contempt for the failure to comply with the December 9 decree in the particulars previously pointed out and a

method prescribed whereby appellant-petitioner could purge himself of said contempt without being incarcerated.

■ To us the clear implication of the reprieve from incarceration was that appellant-petitioner would be imprisoned should he fail to comply with the terms of the purge directives. Such a procedure would be, in effect, similar to probation in a criminal case. However, this is not to be construed as a conclusion that incarceration would be automatic. It would not be automatic for we think that, at the end of forty-five days, it would have to be made known to the court—by petition or some other appropriate method—that the appellant-petitioner had failed to comply with the purge terms and a request made for appropriate action. He would then be entitled to a hearing so that he would have an opportunity to explain to the court his failure to comply with the purge order. See Lovelady v. Lovelady, *supra*.

Consequently, we conclude that although the contempt has been decided, the period in which the appellant-petitioner can purge himself has not run and, as a consequence, he cannot be incarcerated.

■ As to the contention that appellant-petitioner cannot be required to pay money to a non-party, we would point out that the court decided that he owed the money for the reasonable medical expenses incurred in the birth of these children, that the amounts were reasonable, and instead of paying them to appellee-respondent so that she, in turn, could pay the doctors, hospitals and her mother who had paid part of a hospital bill, the court just ordered appellant-petitioner to pay the expenses directly to the hospitals, doctors and former mother-in-law. We can perceive of no valid objection to such a procedure.

Appellant-petitioner says however that these persons and entities are not parties and therefore he has been denied the right to litigate the reasonableness of the charges. We disagree.

 At the rule nisi hearing, he had an opportunity to contest the charges and whether or not they were reasonable. The bills from the various creditors were introduced into evidence and there was testimony as to the reasons for the indebtednesses.

 Although there is a dearth of authority on this subject in Alabama, it is interesting to note that the new Alabama Rules of Civil Procedure, Rule 71, though not in effect at the time of this lawsuit, recognizes that a court order may be made in favor of a person not a party and require court process to enforce such an order; however this rule does exclude creditors of parties to a divorce action. However, the rule does not prohibit an order for the benefit of such a creditor; it merely provides that the creditor would not have standing to enforce such a debt under the divorce decree.

An application of the rule to a case similar to the one at bar would authorize an order requiring payment of a debt to a non-party but would not provide the machinery for enforcement.

We, therefore, do not consider appellant-petitioner's objection to the order requiring him to pay certain sums to non-parties to be well taken.

The sixth assignment of error questions the propriety of the award of attorney's fees in the amount of $250 to appellee-respondent's attorneys.

As we understand appellant-petitioner's argument here, he is saying, not that $250 is an unreasonable attorney's fee for this work, for he had so stipulated; but that there is no evidence to support the court's conclusion that he should pay for appellee-respondent's lawyers.

The allowance of attorney's fees is within the sound discretion of the trial court. Frazier v. Frazier, 273 Ala. 53, 134 So.2d 205. And, to reverse, the evidence must show an abuse of that discretion. King v. Keith, 257 Ala. 463, 60 So.2d 47.

There is no abuse of discretion in this case as to the fixing of attorney's fees.

There being no reversible error argued in this case, it is affirmed.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.