JONES, Justice.
Plaintiffs, who reside in unincorporated areas of Jefferson County, are customers of the Water Works Board of the City of Birmingham. Three of the plaintiffs are also holders of Water Works Board bonds secured by an indenture agreement, the interpretation of which is the central issue presented by this appeal.
The controversy centers around the transfer by the Board of certain of its surplus funds to the general fund of the City of Birmingham. The trial court found that Plaintiffs lacked standing to sue under the indenture agreement and dismissed the action. We affirm.
The indenture agreement provides for the establishment of several funds derived from operating revenue to be overseen by the Board, two of which are the surplus *1192 fund and the renewal, replacement, and improvement fund. In February of each year, pursuant to the indenture agreement, an independent engineer recommends to the Board that an amount be transferred from the surplus fund to the renewal, replacement, and improvement fund.
During the years in dispute (1980, 1982, 1983, and 1984), the independent engineer recommended the transfer of the entire amount on deposit in the surplus fund to the renewal fund, but in each of those years the Board adopted resolutions directing that less⅜ than the recommended amounts be transferred. The money remaining in the surplus fund ($200,000, $196,431, $264,448, and $1,000,000 respectively) was subsequently paid by the trustee into the City’s general fund in each instance.
Plaintiffs claim that they were injured by these transfers in that subsequent rate increases were required by the Board to compensate for the loss of these funds, and because of the damage claimed to have occurred to the security of the bonds by the transfers. They also claim that these transfers were contrary to the terms of the indenture agreement and that the decisions to make the transfers had no rational basis.
For the sake of clarity, we note that, while the consumer Plaintiffs complain generally that they were adversely affected by the increase in water rates, the gravamen of their claim centers around the alleged violation of the indenture agreement. Stated otherwise, the consumers’ statement of their claim, most liberally construed in their favor, does not present a challenge to the rate structure per se; rather, they claim they have been adversely affected by the water rate increase resulting from the Board’s violation of the indenture agreement.
Section 410 of the indenture agreement, entitled “Application and Investment of the Moneys of the Surplus Fund,” provides in pertinent part as follows:
“Whenever ... the Trustee shall have made the payment in lieu of taxes for such year in full, as herein provided, and there shall remain in the Surplus Fund additional moneys, the Trustee, not later than the 10th day of April, shall advise the Board of the amount of such excess moneys. The Board may, by resolution, direct the Trustee to transfer all or any part of such excess moneys to the Renewal, Replacement and Improvement Fund provided the Independent Engineer shall certify, in writing, that such transfer is necessary in order to permit the making of renewals, replacements or improvements to the Water Works System which are essential to its proper operation or preservation and which cannot, safely, be deferred and the cost of which cannot be paid out of the moneys available to the Renewal, Replacement and Improvement Fund without reducing the balance in said Fund below the amount which the Independent Engineer considers to be a safe minimum. A certified copy of such resolution shall be delivered to the Trustee accompanied by the aforesaid certificate of the Independent Engineer not later than the 15th of April, and upon receipt thereof the Trustee shall transfer to the Renewal, Replacement and Improvement Fund all or such part of such excess moneys as the Board in said resolution, shall have directed. On the 16th day of April and on said date annually thereafter, the Trustee shall advise the City Comptroller of the City of Birmingham of the amount of said excess moneys then in the Surplus Fund. The City Commission of the City of Birmingham may, by resolution, direct the Trustee to pay such excess moneys into the General Fund of the City....” (As contained in the second supplement to the indenture agreement. Emphasis added.)
Plaintiffs assert that this provision should be interpreted to mean that the Board would be constrained to abide by the recommendation of the independent engineer. The plain language of this document, however, indicates that the Board may transfer any part of the excess money to the renewal fund, so long as it does *1193 not transfer more than the independent engineer certifies is necessary.
The Board was well within the perimeter of the terms of the indenture agreement, as we interpret this provision, in transferring less than the amount recommended by the independent engineer from the surplus fund to the renewal, replacement, and improvement fund. It is clear, also, that the Board exercised its lawful prerogative in its transfer of excess funds remaining in the surplus fund to the general fund of the City of Birmingham, as provided in the indenture agreement. See also, Code 1975, §§ 11-50-235, -236, and -237.
The indenture agreement connected with this bond has the effect of a contract, and the parties are to be held to the terms of that agreement. While it has been said that the language of a bond should be construed more strongly against the party who bears the obligation, it is also true that a bond should receive a construction that will effectuate the reasonable intentions of the parties. Loeb v. Montgomery, 7 Ala.App. 325, 61 So. 642 (1913) cert. denied, 184 Ala. 217, 63 So. 1023 (1913). Furthermore, where the instrument is prepared pursuant to a statutory provision, the language of that instrument will be construed to effect the purpose for which the legislation was enacted. 11 C.J.S. Bonds § 39 (1938).
Plaintiffs here must be held to have agreed to the terms of this indenture when they voluntarily purchased the bonds. The indenture and the bond must be read together, 12 Am.Jur.2d Bonds § 27 (1964), and Plaintiffs are bound by the terms.
One of those terms, Section 804, limits the right of a bondholder to bring a suit. The stated purpose for the provision is to protect the rights of every holder and to avoid a multiplicity of suits. Three prerequisites to a bondholder’s bringing a suit (for reasons other than to enforce payment at or after maturity of the debt) are clearly set forth in that section. Plaintiffs have failed to comply with the established criteria for such a suit, and, thus, absent some justification which would allow avoidance of that section, lack standing as bondholders to bring this suit.
Plaintiffs also contend that as customers of the Water Works Board they are properly third-party beneficiaries to the indenture agreement. The rules concerning third-party beneficiaries have been well established in Alabama. Barlowe v. Employers Ins. Co. of Ala., 237 Ala. 665, 188 So. 896 (1939). It has been held, though, that one stands in the position of a third-party beneficiary only if he is an intended beneficiary of the original agreement, and not merely one who derives some incidental benefit. Slovensky v. Birmingham News Co., 358 So.2d 474 (Ala.Civ.App.1978), Wood Chevrolet Co. v. Bank of the Southeast, 352 So.2d 1350 (Ala.1977), Costanza v. Costanza, 346 So.2d 1133 (Ala.1977), Harris v. Board of Water & Sewer Commissioners of Mobile, 294 Ala. 606, 320 So.2d 624 (1975).
The contract as to which these Plaintiffs claim to be third-party beneficiaries contains an express disclaimer of any intent to benefit anyone other than the direct parties to the indenture agreement. We reject the contention that these Plaintiffs are anything more than incidental beneficiaries. Consequently, these Plaintiffs are not properly third-party beneficiaries; and, thus, they lack standing to sue as such beneficiaries. The judgment, therefore, is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, AL-MON, SHORES, BEATTY and HOUSTON, JJ., concur.
FAULKNER and ADAMS, JJ., not sitting.