Robert FOLSOM, individually and on Behalf of all those similarly situated, and the Council of Co-Owners of the Colonies Condominium, Plaintiffs,

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO and Continental Illinois Corporation, Defendants.

No. 83 C 9687.

United States District Court, N.D. Illinois, E.D.

Jan. 17, 1986.

Debra G. Moses, Washington, D.C., R. Taylor Cosby, Jr., Oakton, Va., Douglas Rallo, Semmelman & Lombardi, Ltd., Lake Forest, Ill., for plaintiffs.

Richard F. Levy, Paul K. Vickrey, Kirkland & Ellis, Stephen C. Neal, Chaim T. Kiffel, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

This lawsuit involves the sale of condominium units at a development known as The Colonies ("COLONIES") in McLean, Virginia. The suit is brought by Robert Folsom ("FOLSOM"), a condominium owner, on behalf of past and present condominium owners as a class action. To this date no motion for class certification has been made. Folsom also represents the Council of Co-Owners of the Colonies Condominiums ("COUNCIL"). Throughout this Order the Court refers to the putative class members as "class plaintiffs" when ever it is necessary to make a distinction between the Council, the putative class members and Folsom.

The Defendants in this case are Continental Illinois National Bank and Trust Company ("BANK") and its parent corporation and holding company Continental Illinois Corporation ("CIC"). The gist of the complaint is that Bank and CIC, through their involvement in the financing of Colonies, fraudulently concealed (and agreed with others to conceal) construction defects in the common areas at the Colonies from past and present purchasers. The specific allegations underlying each count of this twelve count complaint are discussed throughout the body of this Order. Before the Court at this time are three motions by the Defendants: 1) a motion for reconsideration; 2) a motion to dismiss; and 3) a motion for summary judgment.

*I Reconsideration: Collateral Estoppel*

■ This Court concurs with Judge Roszkowski's conclusion that the Virginia court's jurisdictional finding (that no agency relationship existed between CIC and its subsidiaries) forecloses Plaintiffs from rearguing those issues. *See* Order of 10/22/84 at 7–9. This Court, however, does not agree with the *dicta* contained in footnote 3 of Judge Roszkowski's Order. *See id.* at 10 & n. 3. That footnote suggests collateral estoppel "might" extend to the conspiracy counts "[i]f Virginia recognized a "co-conspirator" theory of personal jurisdiction." This Court finds the extension of collateral estoppel to the conspiracy counts is a bit more complex than footnote 3 suggests.

■ The proponent of collateral estoppel has the burden of establishing the four "traditional" elements ofthe doctrine: 1) the issue sought to be precluded must be the same as that involved in the prior judicial proceeding, 2) the issue was litigated and 3) actually determined in the prior proceeding, and 4) the determination of that issue was necessary to support the judgment in the prior proceeding. *Guenther v. Holmgreen*, 738 F.2d 879, 884 (CA 7 1984). Virginia law is in accord with this "traditional" statement of the doctrine. *See Eason v. Eason*, 204 Va. 347, 350, 131 S.E.2d 280, 282 (1963); *Kemp v. Miller*, 166 Va. 661, 674–75, 186 S.E. 99 (1936). *See also Luke Construction Co. v. Simpkins*, 223 Va. 387, 291 S.E.2d 204 (1982); *Petrus v. Robbins*, 196 Va. 322, 330, 83 S.E.2d 408, 412 (1954).

■ Application of the doctrine, however, is not without exception. Even where the proponent of collateral estoppel has established an issue was raised, argued and necessarily decided in a prior proceeding, "[r]edetermination of the issues [may be] warranted if there is reason to doubt the quality, extensiveness or fairness of the procedures followed in the prior litigation." *Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368, 2375, 76 L.Ed.2d 595 (1983). In the present case, Defendants have failed to meet their burden of establishing the pre-

requisites for application of collateral estoppel to Plaintiffs' consipiracy allegations. Moreover, this Court has serious doubts about the quality and extensiveness of the prior proceeding regarding the conspiracy issues.

A logical place to begin is the Virgina district court's very brief explanation for dismissing CIC from the prior action. After hearing all of Plaintiffs' evidence, the district court determined that it lacked personal jurisdiction over CIC because 1) the evidence did not show the existence of an agency relationship between the various defendant corporations, and 2) the various defendant corporations could not be treated in a like manner because the evidence provided no basis for piercing the corporate veil. Pltf's Ex 1 at 2 (Transcript of District Court's in Court Ruling). The court went on to find the evidence did not support CIC's liability on theories of fraud, conspiracy, breach of fiduciary duty or concealment; these latter findings were vacated on appeal. Pltf's Ex A at 7 (unpublished opinion of the Fourth Circuit Court of Appeals). The district court also ruled in CIC's favor on a statute of limitations issue; however, that ruling was also vacated on appeal. *Id.* Thus, the only ruling to withstand appeal was the Virgina district court's decision that it lacked personal jurisdiction over CIC. That decision, however, makes no mention of a conspiracy theory of jurisdiction. Nor does anything the judge said support the inference that he considered such a theory.

■ The Virgina district court's failure to mention a conspiracy theory of personal jurisdiction gives rise to at least two possibilities: 1) the parties never raised the issue or 2) if the parties raised the issue, the court never determined it. In either case there can be no estoppel effect because the prerequisites to application of the doctrine have not been satisfied. If the parties never raised or contested an issue, then the issue was never *actually* litigated; if the court did not address (or even mention) an issue in its ruling, then the court never *actually* determined the issue. *See*

generally *Restatement (Second) of Judgments* § 27 & comment e. Defendants have introduced no evidence that the district court considered a conspiracy theory as the basis for personal jurisdiction over CIC. Nor does the record submitted by Defendants suggest that any party raised or contested the issue of conspiracy as a basis for personal jurisdiction over CIC. It is true the Virginia district court found CIC could not be held liable on a conspiracy theory. But this Court is not able to use that finding as the basis for applying collateral estoppel because the Virgina court's finding (regarding CIC's liability) came *after* the court had already determined it lacked personal jurisdiction over CIC. Thus, even without the Fourth Circuit's vacation of the district court's liability findings, this Court would not have a basis for applying collateral estoppel. In the absence of any evidence in the record that the conspiracy issue was *actually* litigated or *actually* determined in the prior action, it is not up to this Court to suppose what *might have been* behind the Virginia court's ruling that it lacked personal jurisdiction over CIC. Consequently, the bare assertion that Virginia *may* recognize a conspiracy theory of personal jurisdiction is insufficient to bar the conspiracy claims against CIC in Counts II and IV. Defendants' motion for reconsideration is denied.

## II Motion for Summary Judgment

Defendants next argue they are entitled to summary judgment on the whole of Plaintiffs' complaint for either of two reasons. First, Defendants contend a prior settlement agreement and release executed by the Plaintiffs and the developer of the Colonies bars this lawsuit against CIC and Bank. Second, Defendants assert that there is no genuine issue of material fact that Defendants did not commit fraud, breach of fiduciary duty, or any other wrongful conduct. In light of Defendants other motions, the Court finds it is necessary to address only the first issue (the Release).

The Council of Co-owners of the Colonies Condominiums ("COUNCIL"), entered into a Settlement Agreement and Release ("RELEASE") with one of the developers of the Colonies, Development Management Corporation ("DMC") on January 31, 1979. Deft's Ex C. The Release contains the following provisions

5. *Construction Defects and Warranties:* In further consideration of the sum of Ten Thousand and NO/100 ($10,000.00) Dollars paid by D.M.C. to The Council at execution of this Agreement, The Council releases and discharges D.M.C. from any and all claims and demands relative to construction, maintenance and improvement of the general common elements of the project, except that, ... D.M.C. warrants for a period of one (1) year from date of completion that the work performed by or under supervision of D.M.C. on Unit T–768 of the Rhode Island Building has been ... performed in a workmanlike manner and that materials utilized therein are fit and suitable.

6. *Warranty as to Disclosure of Claims:* DMC warrants that it has disclosed to each member of the Board of Directors of The council all actual and potential claims against and liabilities of DMC arising out of its being the manager of The Colonies pursuant to that certain Management Agreement dated October 1, 1977.

7. *Release:* Except as otherwise provided in this Agreement, *each of the parties hereto does hereby release and forever discharge the other party from any and all claims and demands growing out of any matter or things whatsoever,* and they do hereby mutually agree and declare that neither owes to the other any amount or the performance of any duty or obligation whatsoever, on account of any transaction or contract, expressed or implied, heretofore existing between them, further excepting the following:

(a) any rights and duties of the parties under the Management Agreement by and between The Council and D.M.C.

dated October 1, 1977, after date of execution of this Agreement; and

(b) any and all results and findings occasioned by the annual audit of 1978 of The Council.

8. *Scope of Agreement:* It is specifically understood and agreed that this Agreement shall not, and does not, release any claims demands and causes of action whatsoever which any one or more of the co-owners may or does have in their individual capacities against DMC.

The unit owners of the Colonies obtained control of the Council in January of 1979 and the Council ratified the Release with DMC shortly thereafter. Deft's Ex E at 2, 7 & 11 (Pltf's Response to Requests for Admissions in Prior Suit).

The prevailing rule of law in Virginia prior to July 1, 1980 held that the release of one joint tort-feasor (or one joint and several obligor) had the effect or releasing all joint tortfeasors. *See First & Merchants National Bank v. Bank of Waverly,* 170 Va. 496, 197 S.E. 462, 464 (1938). The same rule applied to concurrent tortfeasors. *See McLaughlin v. Siegel,* 166 Va. 374, 185 S.E. 873, 874 (1936). *See generally W. Prosser, The Law of Torts* § 49 (1971). Defendants therefore argue that the Release effectively bars all of Plaintiffs' claims in this lawsuit because all of the claims alleged in the first amended complaint are based on defects in construction at the Colonies.

Plaintiffs do not contest the Court's statement of Virginia's joint tort-feasor release doctrine prior to 1980. Nor do Plaintiffs argue that a 1980 statutory amendment of the doctrine should be applied retroactively, thus negating the doctrine's effect. The Court also notes that, in opposing Defendants' motion for summary judgment, Plaintiffs have decided not to submit affidavits or other materials in support of their position. Instead, Plaintiffs have relied on the facts established by Defendants. The Court now turns to Plaintiffs' opposition to the motion for summary judgment.

Plaintiffs advance two arguments in opposition to Defendants' motion. First, Plaintiffs argue that paragraph 6 of the Release necessarily generates a genuine issue of material fact. Plaintiff's state the issue as "whether the *cause* of the roof and basements [sic] [defects] known to have existed at the Colonies had ever been disclosed by DMC, or by anyone else." Pltf's Response at 14. But Plaintiffs generally concede that "[a]ll of the witnesses in the prior trial agreed that roof and basement leaks were known to have existed at the Colonies almost from the inception of the development." *Id.* at 14–15. This concession means that Plaintiffs were aware of the roof and basement defects from 1974 (the completion of the development) to 1979 (the signing of the Release). Nevertheless they argue they were unaware of the full scope of the defects and that DMC and Defendants were. In support of this argument, Plaintiffs allude to certain "expert testimony" which would establish that 1) "roof leaks were caused by serious and pervasive construction defects" and 2) the defects "could be cured only by extensive and costly replacement rather than mere patchwork." Pltf's Response at 15.

Plaintiffs' theory is premised on the fact that DMC built the development and, therefore, must have been aware of the full scope of any construction defects causing the roof and basement leaks. Thus, Plaintiffs argue, DMC realized its potential liability for the defects (within the meaning of Release paragraph 6) and never informed Plaintiffs of that liability. This is a fine theory and it may have merit, but Plaintiffs fail to substantiate any part of *that* theory on *this* motion for summary judgment.

■ Plaintiffs have failed to introduce any evidence which suggests DMC's knowledge of the alleged defects was any greater than that of persons who owned units at the Colonies. Plaintiffs have failed to introduce any of the "expert testimony" to which they refer. In short, Plaintiffs have failed to point to any fact which suggests DMC should have been aware of the full scope of the alleged construction defects. Instead, Plaintiffs rest on the bald assertion that DMC violated the disclosure re-

quirement in paragraph 6 because DMC *must have known* of its potential liability for the full scope of construction defects at the Colonies. That assertion does not meet the evidence submitted by Defendants in support of their motion for summary judgment. Plaintiffs' assertion in fact ignores Defendants' evidence. Consequently, Plaintiffs have failed to contradict the evidence introduced by Defendants that DMC had no greater knowledge of the scope of construction defects at the Colonies than did the unit owners or Council members. In failing to contradict Defendants' submissions, Plaintiffs have also failed to generate a genuine issue of material fact. Defendants, therefore, are not barred from asserting the Release in this lawsuit. There is, however, a question of the effect of applying the Release to the facts in this case.

▪ Plaintiffs next contend that, if the Release is given effect, then it can only be read to bar claims by the Council. In other words, the Release cannot be read to bar the claims of individual owners for defects in the common areas of the development. The Court agrees.

Paragraph 9 clearly states that it does not "release any claims ... which any one or more of the co-owners may have in their individual capacities against DMC." And Defendants do not argue that individual owners may not assert claims based upon defects in common areas of a condominium development. Thus, the specific language of the Release neither explicitly nor implicitly excludes claims by individual owners in this case. But, in spite of the rather clear language of the Release (or perhaps because of it), Defendants continue to argue the Release bars the claims of all Plaintiffs.

▪ Defendants' theory is premised on the version of the Virginia Condominium Act ("ACT") in force at the date of the Release. *See* Va.Code § 55–79.79(a) (1979). The Act generally sets out the responsibilities of the condominium association and individual owners. Under the Act, the association is responsible for the maintenance of all common areas and responsibility for the maintenance of individual units belongs to the individual owners. *Id.* The Act's division of responsibilities controls unless otherwise varied by the "condominium instruments." *Id.* But the Act does not explicitly make its division of responsibilities exclusive. For example, the Act does not necessarily preclude a lawsuit by an individual owner (or a group of individual owners) based upon defects in common elements of a development. And Defendants cite no authority (or theory) to support the proposition that such suits by individual owners are barred. The Court, therefore, finds the Act does not bar individual owners from maintaining such a lawsuit and, lacking explicit language, the Act cannot be used to support Defendants' theory that the Council's assent to the Release also binds individual owners. Accordingly, the Court grants Defendants' motion for summary judgment in part and denies it in part. The Council's execution of the Release bars the Council from maintaining an action against these Defendants for construction defects, but the Release does not bar individual owners from maintaining this suit against these Defendants. Defendants' motion for summary judgment, in all other respects, is denied without prejudice.

### III  Motion to Dismiss

The Court now turns to Defendants' Rule 12(b)(6) motion to dismiss the remainder of the complaint.

A. Count II alleges Defendants conspired with others to breach certain fiduciary duties owed to the class Plaintiffs. Defendants contend Count II fails to state a claim because none of the alleged fiduciary duties have a basis in law. Plaintiffs assert that paragraph 12 through 26, 34 and 35 adequately allege the fiduciary duties which support Count II.

▪ Virginia common law recognizes a fiduciary duty owed by corporate directors and officers to shareholders in the corporation as a class. *See American General*

*Insurance Co. v. Equitable General Corp.*, 493 F.Supp. 721, 741 (E.D.Va.1980). But the Court does not read the complaint in this case to allege that any of the suggested fiduciary duties are based on a corporate relationship. This finding remains even though Plaintiffs direct the Court's attention to caselaw identifying corporate fiduciary duties. *See, e.g., Trayer v. Bristol Parking*, 198 Va. 595, 95 S.E.2d 224 (1956); Pltf's Response at 19, 26.

First, Plaintiffs do not allege the Council is a corporation. Nor do Plaintiffs suggest any legal theory for treating the Council as a corporation. Plaintiffs here do nothing more than *suggest* the Council is somehow analogous to a corporation and, therefore, should be treated as one. But that suggestion does nothing more than to allege a fiduciary duty without giving the Defendants or the Court any notice of the legal basis for such duty. An examination of the paragraphs of the complaint cited by Plaintiffs does not help matters.

Paragraph 12 of the complaint explains the identity and history of the Continental Illinois Realty Advisors, Inc. ("ADVISORS"). Paragraph 13 alleges Advisors supervised and controlled the functions of the Council until October, 1977. From 1977 to 1979 Bank's representatives replaced Advisors. Paragraphs 14 through 26 provide little more than a detailed history of the corporate relationships and dealings behind the Colonies development. Those paragraphs do not address the existence of any fiduciary relations in this lawsuit.

Paragraph 34 alleges CIC conspired with Nelson-Virginia, CMI, DMC and Bank to breach the fiduciary duties owed by those entities to the Council and its members. Paragraph 34 does not specify the basis for the alleged fiduciary duties running from Nelson-Virginia, CMI, DMC and Bank to the Council and its members. Nor does paragraph 35 shed any light on the basis for such duties. It is true Plaintiffs allege certain related entities "controlled" the Council, but Plaintiffs do not state how this was accomplished or the particular basis for such a duty. Moreover, in their respon-

sive memorandum, Plaintiffs offer no support for the imposition of a fiduciary duty upon a condominium developer who turns control of an association over to unit purchasers.

Further, Plaintiffs neglect to mention who the fiduciaries are and the scope of the duty owed. Does such a duty span the entire course of construction? Or does such a duty maintain only during the appropriate "turn over" period to the purchasers? These are just some of the questions which Defendants have raised and Plaintiffs have failed to address. Plaintiffs failure to give any explanation why a fiduciary relation should exist in this case or to cite any authority supporting such a relationship is fatal. *See, e.g., Kuhn v. West Alexandria Properties, Inc.*, No. 5416 Slip op. at 17 (March 13, 1980), Deft's Ex H. Without more than is stated in the complaint, the Court finds Plaintiffs have failed to state a claim upon which relief may be granted. Because Defendants' motion to dismiss Count II has been granted, it is unnecessary to address Defendants' further contention that Count II fails to adequately allege a conspiracy.

B. Count III alleges Bank failed to disclose certain construction defects (of which it was aware) to purchasers of Colony units. Bank contends Count III must be dismissed for failure to state a claim. (Judge Roszkowski previously granted summary judgment in favor of CIC on Count III. *See* Order of October 22, 1984.) Bank's first line of attack is that Count III fails to plead fraud with particularity.

The prevailing interpretation of Fed.R.Civ.P. 9(b) requires a plaintiff to plead the time, place and substance of allegedly false representations. *E.g., Serig v. South Cook County Service Corp.*, 581 F.Supp. 575, 579–90 (N.D.Ill.1984). But Rule 9(b)'s requirement of pleading fraud with particularity does not preempt the otherwise liberal pleading standard set by Rule 8(a). *See generally* Wright & Miller, *Federal Practice and Procedure: Civil* § 1297.

Count III essentially alleges that Bank knew about construction defects at the Colonies and failed to disclose the defects to purchasers. The complaint further alleges Bank actively concealed those defects from purchasers. Given the background information sprinkled throughout the complaint, these allegations give Bank adequate notice of the particularities of the alleged fraud (*e.g.*, concealment of defects at the time and place of sale). As a participant in the development and sale of the Colonies units, Bank should already be aware of specific sale dates and places. Little would be gained by requiring Plaintiffs to plead that information. Count III, therefore, meets the requirements of Rule 9(b). *See Baselski v. Paine, Webber, Jackson & Curtis, Inc.*, 514 F.Supp. 535, 540 (N.D.Ill.1981) (Rule 9(b) requires less specificity when transactions at issue are numerous or take place over extended period of time).

Bank's next attack on Count III focuses on whether it had a duty to disclose material facts to unit purchasers. Bank contends it had no duty to disclose facts to Plaintiff purchasers and, therefore, Count III must be dismissed. The Court agrees.

The Virginia Supreme Court has adopted the position taken by the *Restatement (Second) of Torts* § 551. Liability for a failure to disclose a material fact may follow only if the defendant had a duty to exercise reasonable care to disclose the matter in question. *Ware v. Scott*, 220 Va. 317, 257 S.E.2d 855 (1979). The amended complaint fails to suggest any basis for finding Bank had a duty to disclose material facts to purchasers of Colonies units. As the Court reads the complaint, Bank was a lender to the developers (and later the purchasers) of the Colonies units. It was no more than this.

Paragraph 13 of the Complaint makes cryptic reference to Bank as a "controller" of the Council prior to 1979. But that vague allegation (without more) is insufficient to support the finding of a duty to disclose material facts. Bank's motion to dismiss Count III is granted.

C. Count IV alleges CIC conspired with others to commit fraud. Count V alleges Bank conspired with others to commit fraud. For the sake of brevity, the Court addresses both Counts in this section.

Plaintiffs allege CIC, Realty and Nelson agreed to induce fraudulently purchasers of Colonies units without disclosing construction defects in common areas. Each of the three entities was aware of such defects and concealed them from unit owners before and after sale. Each sale was part of a plan by the three to substitute individual borrowers (unit purchasers) for Nelson-Virginia's obligation on its construction loans. Plaintiffs allege four acts in furtherance of the conspiracy: 1) an agreement between the co-conspirators to cover-up and not to disclose the cause of the construction defects so that buyers and owners would not be aware of the magnitude of the defects; 2) decisions to make cosmetic repairs to conceal the defects in common areas in order to avoid making more costly (but adequate) repairs; 3) conscious decisions not to enforce existing rights against those primarily responsible for the defects (Nelson-Virginia, Nelson, Savoy, Schultz, various subcontractors, bonding and surety companies and the architect); 4) decisions not to disclose information about the defects to purchasers, despite repeated inquires. Count V parrots the allegations in Count IV (except for number 3 above) against co-conspirators Bank, CIC and DMC.

Defendants do not attack the fraud upon which Counts IV and V are predicated, but they do attack the adequacy of the allegations of a conspiracy. Defendants call these allegations vague and conclusory and suggest that because Plaintiffs have participated in a prior similar lawsuit their complaint in this case should be held to a higher standard. Defendants are wrong. Rule 8(a) has not been amended to require what Defendants request. All the necessary allegations to state a claim for conspiracy to defraud unit purchasers are stat-

ed with sufficient particularity to withstand Defendants' motion to dismiss: the agreement by several Defendants to conceal known defects from purchasers and to cover up defects after sales resulting in damages to Plaintiffs. *Old Security Life Ins. Co. v. Continental Illinois Nat'l Bank,* 740 F.2d 1384, 1397 (CA7 1984) (elements of civil conspiracy include 1) an agreement 2) between two or more persons 2) to commit an unlawful act or inflict a wrong against another and 3) an overt act 4) resulting in damages). *Accord Lenard v. Argento,* 699 F.2d 874, 882 (CA 7 1983); *Hampton v. Hanrahan,* 600 F.2d 600, 620–21 (CA 7 1979). Defendants motion to dismiss Counts IV and V is denied.

D. Counts VI and VII allege CIC and Bank were unjustly enriched by their actions toward purchasers of Colonies units. Because all Counts (save Counts IV and V) have been dismissed, the Court reads Defendants' reference to "actions" to mean Defendants' conspiracy to defraud purchasers by their nondisclosure of known defects.

■■■ In order to recover under a theory of unjust enrichment, Plaintiffs must plead and prove that CIC and Bank 1) received benefits which, under the circumstances, 2) would be unjust for them to retain. *Robinson v. Robinson,* 100 Ill. App.3d 437, 57 Ill.Dec. 532, 537, 429 N.E.2d 183, 188 (2nd Dist.1981); *Business Development Services, Inc. v. Field Container Corp.,* 96 Ill.App.3d 834, 52 Ill.Dec. 405, 414, 422 N.E.2d 86, 95 (1st Dist.1981). *Accord Central Nat'l Bank v. First & Merchants Nat'l Bank,* 171 Va. 289, 198 S.E. 883, 891–93 (1938). If Defendants received a benefit as a result of their conspiracy to conceal defects from purchasers, it would undoubtedly be unjust for Defendants to retain those benefits. But Plaintiffs fail to identify the *specific* benefits which Defendants have received as a result of the conspiracy. The Court could, as could Defendants, speculate on the benefits Plaintiffs have in mind, but that is not the purpose behind federal pleading rules. A complaint should give the Defendants fair notice of a

claim which will entitle Plaintiffs to relief. Plaintiffs failure to identify the *specific* benefit received by Defendants as a result of their conspiracy to conceal defects is fatal to Plaintiffs' claim because, without the retention of some benefit by Defendants, Plaintiffs are not entitled to the relief they request. Accordingly, Defendants' motion to dismiss Counts VI and VII must be granted.

E. Counts VIII through XII allege violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 *et seq.* ("RICO"). Count VIII alleges a § 1961(a) RICO violation by CIC. Count IX alleges a § 1961(a) violation by Bank. Count X alleges a § 1962(c) violation by CIC and Count XI alleges the same violation by Bank. Count XII alleges a § 1962(d) violation by both Bank and CIC.

■■■ RICO pleading is subject to no special rules. *Sedima v. Imrex, Co.,* —— U.S. ——, —— – ——, 105 S.Ct. 3275, 3284–85, 87 L.Ed.2d 346 (1985); *Haroco, Inc. v. American Nat'l Bank,* 747 F.2d 384 (CA 7 1984). The complaint, of course, must still meet the requirements of Rules 8(a) and 9(b). Defendants identify three deficiencies in the RICO counts: 1) they fail to allege a racketeering activity with sufficient particularity; 2) the RICO enterprise is not identified; 3) there are inadequate allegations of a RICO conspiracy. The Court need only discuss the first of these three contentions.

■■■ Section 1961(5) defines a pattern of racketeering activity as at least two acts of racketeering activity within ten years of each other. The broad range of acts which constitute racketeering activities is listed in subsection (1). All of these RICO counts are premised upon acts of mail or wire fraud to satisfy the racketeering activities requirement. All the counts generally describe the mail or wire fraud as occurring within the ten year period, but no other details are provided. Indeed, nowhere in the complaint do Plaintiffs identify any mailings or wire communications by Defendants which could support the RICO counts. Application of Rule 9(b) to a RICO

claim requires, at minimum, that Plaintiffs identify the transaction, the misrepresentation and the parties involved in the alleged mail or wire fraud. *See Haroco*, 747 F.2d at 405. This Plaintiffs have failed to do in all of the RICO counts. They have pleaded no more than the broadest of conclusions to support their claims. Consequently, Defendants Motion to dismiss Counts VIII through XII must be granted.

### IV   Conclusion

In sum, then, Defendants' motion for reconsideration is denied. Defendants' motion for summary judgment (premised on the 1979 DMC Release) is granted as to Plaintiff Council, but denied as to Folsom and the Class Plaintiffs. Defendants' motion for summary judgment is, in all other respects, denied. Defendants' motion to dismiss Counts II, III, VI, VII and VIII through XII is granted. However, Defendants motion to dismiss Counts IV and V against CIC and Bank is denied.

IT IS SO ORDERED.