# ELLETT *vs.* WADE.

[BILL IN EQUITY TO ENJOIN EJECTMENT SUIT AT LAW, AND FOR SPECIFIC PERFORMANCE OF CONTRACT.]

1. *Married woman; statutory separate estate; what property constitutes.* Real estate purchased by, and conveyed to a married woman in 1861, although paid for by her with money derived from the income and profits of property settled in the hands of a trustee to her separate use, by an ante-nuptial agreement made in 1839, is her separate estate by force of section 2371 of the Revised Code, and not by the common law.

2. *Same; how only can be conveyed.*—The separate estate of a married woman, whether by the common law, or by the Revised Code, can only be sold and conveyed by husband and wife jointly, in the manner prescribed by the Revised Code, unless the will, deed, or other instrument by which the separate estate is created, otherwise provides.

3. *Power, defective execution of; general rule in equity as to.*—As a general rule, equity will not help, aid, or carry into effect the defective

Ellett v. Wade.

exection of a power created by statute ; especially, defects which are of the essence or substance of the power, will not be aided.

4. *Specific performance of contract for sale of real estate; when will not be decreed.*—Courts of equity will not decree the specific execution of a contract for the sale of real estate, where the contract is founded in fraud, imposition, mistake, undue advantage or gross misapprehension, or where, from a change of circumstances or otherwise, it would be unconscientious to enforce it.

5. *Same, improvements upon real estate ; when compensation for will not be allowed.*—Generally, equity will not grant relief to a complainant, by way of compensation, who has made improvements upon lands, the legal title to which is in the defendant, where there has been neither fraud nor acquiescence on the part of the latter, after he has knowledge of his legal rights.

APPEAL from the Chancery Court of Madison.
Heard before Hon. WM. SKINNER.

The facts are sufficiently stated in the opinion.

ROBINSON & WALKER, for appellants.—(Appellant's brief did not come into Reporter's hands.)

BRICKELL and RICE, *contra.*—1. By section 2371 of our Revised Code, all property to which a wife becomes entitled after the marriage, in any manner, except only by a transaction or instrument the terms of which are so clearly in opposition to the provisions of the Code as to separate estates, as to show that those provisions of the Code were not to govern the property acquired, is her separate estate under the Code.—*Molton v. Martin*, 43 Ala. 651.

2. The separate estate of a wife in lands, can not, in this State, be conveyed or divested, by a deed executed during her husband's life, by her only, and to which she and the supposed purchaser are the sole parties.—*McBryde v. Wilkinson*, 29 Ala. 662 ; *Waddell v. Weaver*, 42 Ala. 293.

3. A court of equity will not aid the pretended purchaser, claiming under such deed, to divest the wife of her separate estate ; especially when it is shown that all he agreed to pay for the property, and all he did pay for the property, was in Confederate treasury-notes, and in the year 1864, when such notes were almost worthless. It is

30

against conscience for a court to deprive a married woman of her separate estate, by giving an effect to a transaction in 1864 for Confederate treasury-notes, which the parties did not give to it by what they actually did. In such a case, the court is passive, and does nothing in aid of the man who asks it to give him the married woman's land for the Confederate treasury-notes.—*Houston v. Deloach*, 43 Ala. 364; *Johnson v. Johnson*, 5 Ala. 97.

4. In *Smith v. Clay*, reported in a note in 3 Brown's Ch. Rep. 639, after stating that a court of equity is never active in relief against conscience or public convenience, it is said : " Nothing can call forth this court into activity, but conscience, good faith and reasonable diligence; where these are wanting, the court is passive and does nothing." *Johnson v. Johnson*, 5 Ala. 97.

In *Boney v. Hollingsworth* (23 Ala. 698), this court held, that where the relation of attorney and client, guardian and ward, principal and agent, exists, the duty devolves upon the party in whom the trust is reposed, of showing that the contract (between those sustaining these relations to each other) is in every respect just, fair, and equitable;" and that the same principle "applies to all cases (or relations) from which confidence or influence naturally results."

In *Trippe v. Trippe*, 29 Ala. 643, the point thus decided in *Boney v. Hollingsworth* was re-affirmed; and this court held that "chancery will not sustain a conveyance made through a mistake as to a matter which constitutes a material inducement to the act, if that mistake resulted from the misrepresentation of the other contracting party, though innocently made."

In *Thompson v. Lee*, 31 Ala. 305, this court quote with approval from very high authority the following propositions : "If confidence is reposed, it must be faithfully acted upon, and preserved from any intermixture of imposition. If influence is acquired, it must be kept free from the taint of selfish interests, and overreaching bargains. * * * The relief (which in such cases the court will certainly grant,) stands upon a general principle, applying to all the variety

of relations in which dominion may be exercised by one person over another."

5. Married women, as well as minors, "are the peculiar objects of the law's care." The very disabilities which it imposes upon them, are imposed for their protection and benefit."—*Houston v. Deloach*, 43 Ala. 370; *Bibb v. Pope*, ib. 190.

PECK, C. J.—The appellee, a married woman, through her brother as her agent, in 1861 purchased the premises described in appellant's bill of complaint, lying in the county of Madison, for the sum of $1,800, and the same was conveyed to her by the name of Sarah A. Wade, the wife of Littleberry Wade.

The appellant states in his said bill, that in 1864 he purchased said premises from the appellee for the sum of $2,800, the husband of the appellee being then alive, and received from her a deed for the same, in her own name, her husband not being a party thereto, and went into the possession of said premises, and still has the possession thereof.

In 1867 the appellee, her husband then being dead, commenced her action under the Revised Code, in the nature of an action of ejectment, against the complainant in the circuit court of said county, to recover the possession of said premises; thereupon, in 1868, the said action being then pending and undetermined, the complainant filed his bill in the chancery court of said county, to enjoin said appellee from the further prosecution of her said action, and prayed that she might be decreed specifically to execute said contract of sale, and required to convey said premises to him, and that the legal title might be divested out of appellee and vested in complainant, and for general relief.

The complainant in his bill, among other things, states that in 1839, the appellee and said Littleberry Wade, in contemplation of marriage, made an ante-nuptial agreement and settlement, by which all the estate and property of said appellee, with what she might receive from her

father's estate, was conveyed to her brother, Allen Christian, in trust; that said property should be held by said Allen Christian for the use and support of said appellee, and not for the use and benefit of said Littleberry Wade, and if she should die without leaving issue, the said property, both real and personal, should belong to said Allen Christian exclusively, for his use and benefit; that said ante-nuptial agreement was executed under the hands and seals of all three of said parties. That said Allen Christian was dead, and complainant was unable to learn whether any other person had been appointed trustee in his place. That said appellee was permitted to have the possession of said trust property, and to use and take the income and profits of the same to her own use. That said premises so purchased by her, were paid for out of the income and profits of her separate estate, and complainant avers that said appellee having so bought and paid for said premises with the proceeds of her said separate estate, under said marriage settlement, she took and held a contract separate estate in said premises in the same way and manner, and to the same extent, that she held said property under said marriage settlement; that she held therein, and had all the rights, and possessed all the powers, which she had in and over the estate secured to her by said marriage settlement, and had the same right and power to sell, dispose of and convey the same, that she had to sell and convey the property settled to her separate use, &c., as aforesaid.

The bill further states that complainant paid said $2,800 for said premises in Confederate treasury notes; that appellee was willing to accept the same; that she declared she had confidence in that kind of money, and was perfectly willing to receive it in payment for said land; that said Confederate treasury notes were then greatly depreciated, yet, depreciated as they were, $2,800 in such notes was a full and fair compensation for said land; that appellee said she preferred said notes to any other money than gold.

The appellee's deed for said land to complainant is mead

an exhibit to his bill, and appears to have been executed with her mark and seal, and is attested by Lazarus H. Vann, J. P., and acknowledged before him. Said bill also further states that appellee's husband, Littleberry Wade, was present when said purchase was made, and when said deed was executed, and assented thereto, and also assented to the payment in Confederate treasury notes. That complainant did not know it was necessary for the husband to execute the said deed with his wife; that he believed her deed alone was sufficient to give him a good title, and he did not believe that appellee or her said husband knew it was necessary that the deed should be executed by the husband as well as the wife; that if he and they had known a joint deed by husband and wife was necessary, he believed they would willingly have made such a deed.

The answer of the appellee was required to be, and is on oath, and very fully denies all the alleged equities of the bill. The following brief synopsis is all that is deemed necessary to be stated for the purposes of this opinion:

It admits the marriage settlement; that the trustee therein named had been dead many years; that several successive trustees had been appointed, but that the last one appointed died some years before; that she had been permitted to have the possession of and use of the trust property, and that the lands purchased and sold as stated to the complainant were paid for out of the income and profits of the said trust property; that said lands were purchased for her by her brother, as her agent, and the deed was made to her in her own name. She admits the sale to complainant, but says it was made by her husband, and not by herself, and that she unwillingly made the deed to complainant, by the request of her husband, to whom the Confederate treasury-notes were paid. Denies that she was willing the lands should be sold for Confederate treasury-notes, or that she said she had confidence in that kind of money, or that she had rather have it than any other money except gold, but alleges that complainant said it was better than any other money than gold; and that complainant persuaded her husband to sell said lands for that

sort of money; that she and her husband were old people, her husband being over eighty years old, and lived by themselves, and that at the time of the sale they had but little intercourse with their neighbors, the country being in the possession of the United States troops, and that it was dangerous to go much about; that they did not know the value of Confederate treasury-notes, but that complainant did, and, as she believed and states, falsely represented them to be better than United States currency, and that when the war closed would be equal to gold; that said Confederate currency was worthless, and was never used, or of any benefit to them ; that she offers to return the same, and files it in court with her answer. Admits that neither she nor her husband knew it was necessary for both of them to sign said deed to complainant; that if they had, she supposes they would have so signed the same. Admits that when she found out that said deed did not convey her title to said lands to complainant, as she was advised by counsel it did not, she determined, considering the circumstances, she would recover said lands of complainant, if she could. Insists that complainant is not entitled to the relief he asks, because she says said purchase and deed were obtained by fraud, and that the consideration of said deed is illegal, and said deed void, &c.; and demurs to said bill for want of equity.

The complainant and appellee were examined as witnesses, each in his own behalf, and a large number of other witnesses were also examined by both parties. The deposition of complainant sustains the bill, and that of appellee sustains her answer. But little of the evidence of the other witnesses is pertinent to the case. One of the witnesses of the complainant, said Lazarus H. Vann, says he was present when the said deed was executed, but not when the contract of sale was made, and that appellee took the Confederate money without objection, and said she preferred Confederate money to greenbacks. Another of complainant's witnesses says he was present at the same time, the witness Glass, and that appellee said nothing about the money, nor her preference for Confederate

money to greenbacks. Some of the witnesses say Confederate money was uncurrent, some that it passed among the people, some that it was worth only ten cents in the dollar, and others that it was worthless and could not be used; that it was against the law to pass it. Complainant in his evidence testified that he had put up six log cabins and dug a well upon the place, the whole of the improvements being valued at $400. No mention of these improvements is made in the bill.

On the hearing, the chancellor dismissed the complainant's bill. He appeals to this court, and assigns said decree dismissing said bill for error, and that the chancellor erred in refusing to allow complainant compensation for the improvements put upon the land, &c.

1. The complainant insists in his bill, that, inasmuch as the land sold to him by the appellee was purchased by her, and paid for with the income and profits derived by her from the estate settled upon her by the said ante-nuptial agreement, made in 1839, she held the same as a separate estate by contract, and not under the Revised Code, and that she had in and over the same all the powers that she had in and over the estate secured to her by said deed of marriage settlement; that she had the same power to sell, dispose of, and convey the same, as she had to sell and convey the property so secured to her by said ante-nuptial deed.

We can not yield our assent to the correctness of this proposition. This land was purchased by appellee in 1861, and it was conveyed to her by her name of Sarah A. Wade, wife of Littleberry Wade. This land became her separate estate by force of section 2371 of the Revised Code, and not by the common law. This section is in the following words: " All property of the wife, held by her previous to the marriage, or which she may become entitled, after the marriage, *in any manner*, is the separate estate of the wife, and is not subject to pay the debts of the husband." The deed, by which this land was conveyed to the appellee, does not convey it to her as her separate estate. Independent of said section of the Revised Code, it would have

belonged to her by the common law, but not as a separate estate, and the marital rights of the husband would have attached to it, as at the common law. The mere fact that she paid for it with money derived from the income and profits of the separate estate settled upon her by said antenuptial deed, would not, in such a case, have changed the character of her estate in said lands. · Being her separate estate, by virtue of said section of the Revised Code, it vested in her husband as her trustee, and could only be sold and conveyed by the joint deed of both, attested by two witnesses, or acknowledged before some officer authorized to take the acknowledgment of deeds and' conveyances of real estate.—Rev. Code, §§ 2372, 2373, 1552.

The power to sell and convey the real estate of a married woman, held to her separate use, whether by the common law or the Revised Code, is a special statutory power, unless the will, deed, or other instrument by which the separate estate is created otherwise provides, and this power must be strictly complied with, as to all matters that are of the essence or substance of the power. Courts of equity will rarely interpose to correct, aid, or carry into effect the defective execution of such powers. This court has held, that a court of equity can not relieve against the defective execution of a power created by law; as distinguished from a power created by the act of the parties. *McBryde's Heirs v. Wilkinson*, 29 Ala. 662; *Waddell v. Weaver's Adm'rs and Heirs*, 42 Ala. 293. We are not willing to go quite to this extent, though, as a general proposition, it may be admitted to be correct; yet, we think a court of equity, where its aid might seem to be necessary, to prevent fraud, would struggle hard to find an exception to this general rule. Judge Story, in his 1st volume of Equity Jurisprudence, § 90, says : " But, in cases of defective execution of powers, we are carefully to distinguish between powers which are created by private parties, and those which are specially created by statute ; the latter are construed with more strictness ; and whatever formalities are required by the statute, must be punctually complied with, otherwise, the defect can not be helped, or, at least,

may not, perhaps, be helped in equity; for courts of equity can not dispense with the regulations prescribed by statute; at least, where they constitute the apparent policy and object of the statute."

Whatever may be said on this subject, the case in hand is not one that can be helped, aided or carried into effect. It is a case that does not commend itself to the conscience of the court. It not only fails to conform, in any respect, with the requirements of the statute, but is also repugnant to, and in conflict with, the plainest principles of justice and equity. Real estate, worth eighteen hundred dollars, was purchased for a consideration wholly inadequate. The currency received, if not utterly worthless, to say the most of it, was not worth more than ten cents in the dollar; besides, it was a currency that it was against public policy to permit it to be used at all; a currency that was not only illegal in itself, but was, also, issued by a government in open rebellion against the United States; a currency issued to sustain a government instituted and organized for an unlawful purpose—the destruction and overthrow of the legitimate constitution and laws, both of this State and of the United States.

2. The complainant's case is not bettered by treating it as a case for the specific performance of a contract for the sale of said premises. Courts of equity will not decree the specific performance of a contract for the sale of real estate, where the contract is founded in fraud, imposition, mistake, undue advantage, or *grave misapprehension*; or, where, from a change of circumstances, or otherwise, it would be unconscientious to enforce it.—1 Story's Equity, § 750. So, also, courts of equity will not decree a specific performance of hard or unconscionable bargains; or where it would produce injustice, or where it would be against public policy; and, generally, not in any case where such a decree would be inequitable *under all the circumstances.*—Story's Eq. § 769. On the ground, therefore, that this sale to the complainant was a hard and unconscionable bargain, and under all the circumstances, it would be inequitable to decree its specific execution, as

well as on the ground of public policy, the chancellor properly declined to decree its specific execution.

3. This is not a case where the bill should have been retained for the purpose of compensation for the improvements alleged to have been made by the complainant. If the land sold to the complainant had been conveyed in conformity to the Revised Code, and the appellee had filed her bill to set the sale aside, as obtained by fraud, or on the ground that it was a hard and unconscionable bargain, or other cause, then, if compensation was proper, the court might have required the complainant, seeking equity, to do equity. In the case of *Putnam v. Ritchie* (6 Paige Rep. 390), Chancellor WALWORTH says : " I have not been able to find any case, either in this country or in England, where the court of chancery has assumed jurisdiction to give relief to a complainant, who has made improvements upon land, the legal title to which was in the defendant, where there has been neither fraud, nor acquiescence on the part of the latter, after he had knowledge of his legal rights." Where a party, lawfully in possession under a defective title, has made permanent improvements, *beneficial and valuable to the true owner*, if relief is asked in equity by the true owner, he will be compelled to allow for such improvements.—2 Story's Eq. 1237, note 3.

If the complainant is entitled to compensation for improvements in this case, he can have his remedy on the trial of the action at law, by making the suggestion authorized by section 2602, Revised Code, and then the question as to improvements can be determined by the jury. Upon the whole case, we think the chancellor committed no error in dismissing the complainant's bill. His decree is, therefore, affirmed, at the appellant's costs.