Bess Costanza, the plaintiff, appeals from a judgment for the defendant, Central Bank of Birmingham, on its counterclaims in Mrs. Costanza's action to cancel and annul a mortgage.
Bess Costanza and her husband, Vincent, operated two gift shops in Birmingham known as "Gifts by Bess" — one located in the Eastwood Mall and the other in Hoover. Prior to the opening of the Hoover Store, the Costanzas jointly owned and operated the Eastwood Mall store and it was characterized by Mr. Costanza as a husband and wife operation.
In 1973, the Costanzas decided to open the Hoover store and subsequently in July, 1974, Mr. Costanza obtained a loan from Central Bank for approximately $20,000. This money was deposited in the commercial checking account for "Gifts by Bess." Mrs. Costanza had the authority to write checks against this account and did actually draw checks against this account. This loan was refinanced in January, 1975, and secured by the inventory at the two stores. Immediately prior to June 23, 1975, the gross balance due on this loan was $16,881.02, with the payoff balance being $13,209.24.
On June 23, 1975, Mr. Costanza negotiated for an additional loan of $10,000 and executed to the Bank a second mortgage on residential property jointly owned by the Costanzas for a total indebtedness of $26,888.02. Mr. Costanza forged his wife's signature on this mortgage agreement with the Bank; and he testified at the trial that his wife had no knowledge of the forgery. (Upon Mr. Costanza's assurance that his wife had signed the mortgage, the Bank notarized her execution of the mortgage agreement out of her presence.)
The Bank first learned of the forgery when Mrs. Costanza phoned the Bank's manager three weeks after the loan had been made. The branch manager, Mr. Massey, testified that Mrs. Costanza asked him whether her husband had recently borrowed any money; and that, upon learning that her husband had attempted to mortgage the property, Mrs. Costanza requested Massey not to tell her husband that she had learned of the forgery because "she was afraid of what he might do".
In November, 1975, pursuant to a pending divorce decree action, the Bank was requested by the Costanzas to supply information regarding this loan so that it could be incorporated in the separation agreement which specifically referred to the June 23 mortgage. The agreement stated that the homestead was to be sold, and, "[f]rom the proceeds of the sale of the aforesaid homestead, all expenses of the sale will first be deducted, then payment in full of the first and second mortgages . . . shall be made. . . ." In essence, the agreement specifically referred to the existence of a debt to the bank in the amount of $22,401 and expressly stated that the parties agreed to sell their jointly-owned real estate to satisfy the debt to Central Bank.
Mrs. Costanza filed a bill to cancel and annul this mortgage. The Bank filed a counterclaim against Mrs. Costanza and a cross claim against Mr. Costanza seeking (1) to enforce the separation agreement and (2) an equitable lien on the real estate.
The trial Court decreed that the mortgage executed on June 23, 1975, was void as to Mrs. Costanza and further decreed that Central Bank had an equitable lien on the real estate to secure the payment of $21,280.95. This money was to be paid from the proceeds of the sale of the real estate as provided in the separation agreement.
It should be noted at the outset that both Mrs. Costanza and the Bank agree that the June 23 mortgage is void. Therefore, our scope of review is limited to the question of whether the trial Court was justified in assessing an equitable lien.
As previously noted, the trial Court held the mortgage void but nonetheless imposed a lien on the property in question for the *Page 1135 
full amount of the indebtedness. The Bank, in urging affirmance, contends that the decree below is sustainable on either one of the two theories asserted in the counterclaim: (1) The Bank was the third party beneficiary of the settlement agreement between the Costanzas, which agreement was merged into and became part of the final divorce decree; and (2) Mrs. Costanza's conduct relative to the last loan procured from the Bank by her husband was sufficient to create an equitable lien against the homestead to the extent of the aggregate balance due the Bank.
 Third Party Beneficiary Theory
The only cases cited by appellee for this theory supportive of the trial Court's final decree are Harris v. Board of Waterand Sewer Commissioners of Mobile, 294 Ala. 606, 320 So.2d 624
(1975); Anderson v. Howard Hall Co., 278 Ala. 491, 179 So.2d 71
(1965); and Mutual Benefit Health Accident Association ofOmaha v. Bullard, 270 Ala. 558, 120 So.2d 714 (1960). None of these cases stand for the proposition that a judgment creditor acquires the status of a third party beneficiary to enforce the provisions of a divorce decree to which it was not a party. Counsel for Mrs. Costanza likewise fails to cite any authority to the contrary; and our independent research has failed to uncover any direct authority in our case law which speaks to the subject at hand.
We are constrained to conclude, however, that there are two compelling reasons for rejecting the third beneficiary theory as a basis for allowing the Bank the relief granted by the decree here under review.
1. The traditional elements of the third party beneficiary tests — as pointed out in Harris, Anderson, and Bullard — are here lacking. It is essential that one claiming benefits under a contract to which he was not a party must show that he falls within that class of persons for whose benefit the contract was intended. As this Court recently stated in Harris: "The only condition being that the third person must have been intended to be directly and not incidentally benefited."
The purpose of agreements of this nature in a divorce case is to finalize a property settlement between spouses. The creditor is not a party, nor is the agreement entered into for his benefit. Such agreements can neither enlarge nor restrict obligations lawfully due by the divorcing spouses to third party creditors. Thus, under well-established precedent, the Bank, not being a party for whose benefit the settlement agreement was made, does not have standing to sue on or enforce the terms of the settlement agreement.
2. There is yet another reason for rejecting the terms of the divorce decree as the basis for the relief sought by the Bank. This reason was alluded to by way of dictum in the Court of Civil Appeals' case of Wilson v. Wilson, 53 Ala. App. 194,298 So.2d 616 (1973). The Court of Civil Appeals addressed a similar problem (though raised by a party rather than a non-party) thusly:
 "Although there is a dearth of authority on this subject in Alabama, it is interesting to note that the . . . Alabama Rules of Civil Procedure, Rule 71, though not in effect at the time of this lawsuit, recognizes that a court order may be made in favor of a person not a party and require court process to enforce such an order; however this rule does exclude creditors of parties to a divorce action. However, the rule does not prohibit an order for the benefit of such a creditor; it merely provides that the creditor would not have standing to enforce such a debt under the divorce decree.
 "An application of the rule to a case similar to the one at bar would authorize an order requiring payment of a debt to a non-party but would not provide [the non-party] the machinery for enforcement."
Additionally, the Committee Comments to Rule 71, ARCP, conclude with this paragraph:
 "This rule [permitting enforcement of a court order by a non-party] has been *Page 1136 
drawn so as to specifically exclude creditor of a party in a divorce proceeding. For example, should the court order the husband to pay for certain appliances to be used by the ex-wife, the vendor of the appliances would not be entitled to take advantage of this rule. To permit this Rule to apply in such an instance would further complicate an already difficult proceeding."
 Equitable Lien Theory
The remaining theory argued by the Bank in support of the trial Court's decree is that of an equitable lien. At first blush, taking the strongest tendencies of the evidence favorable to the Bank's position, in light of the ore tenus
rule, we were inclined to the view that the equitable lien impressed by the decree below in favor of the Bank against Mrs. Costanza's interest in the property was sustainable, at least to the extent of the "new money" (i.e., the last loan of $10,000). Our further study of well-established "equitable lien" principles, however, constrains us to reach a contrary conclusion: The fatal weakness of the Bank's contention for an equitable lien consists in the total failure of the evidence to establish any equitable grounds for the intercession of a court to impress a lien against Mrs. Costanza's real property as security for any portion of Mr. Costanza's debt to the Bank.
Those "well-established `equitable lien' principles" alluded to above are contained in a rather long line of Alabama cases. See, e.g., Robbins v. Bell, 285 Ala. 124, 229 So.2d 511 (1969);Title Insurance Company v. Ward, 279 Ala. 24, 181 So.2d 93
(1965); Murphy v. Carrigan, 270 Ala. 87, 116 So.2d 568 (1959);Rhodes v. Schofield, 263 Ala. 256, 82 So.2d 236 (1955), and other cases cited therein.
Although arising under multiple and varying circumstances, these cases stand for the rule that a court is authorized to exercise its equity power to impress a lien upon real property as security for a debt only where the person against whose interest the lien is declared and enforced is guilty of some wrongdoing in procuring the loan or service by which the debt is created. Our cases make clear that, whether the equitable grounds essential to give the "equitable lien" principle a field of operation are expressed in terms of "fraud", "unclean hands", or "unjust enrichment" mere passive conduct on the part of the party against whose interest the lien sought is not sufficient.
Our careful review of the record fails to disclose any conduct on the part of Mrs. Costanza which even approaches any culpability of the nature required to invoke the operative effect of the equitable lien doctrine.
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON, EMBRY and BEATTY, JJ., concur.