[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 455 
Paulette Jordan and Thomas Lee Mitchell, Sr., were married in 1989; they were divorced *Page 456 
in 1991. During their marriage, they lived in a mobile home on three acres of land. The divorce judgment required Jordan to convey her interest in the land to Mitchell.
In August 1991, three months after the divorce was final, the parties began living together again in the mobile home. Mitchell testified that when they began living together again, they "repeated [their] marriage vows" and "vowed fidelity to one another." He said that they lived together as husband and wife and that they had what he would call a "common law marriage." Mitchell testified that shortly after they began cohabiting, they agreed to sell the mobile home and to build a house on the property for their residence.
Mitchell stated that during his relationship with Jordan (both before and after the divorce), Jordan handled all the household finances. They had joint checking and savings accounts and their funds were routinely commingled. After the divorce, Mitchell gave Jordan his paycheck, and she deposited it into a joint account, along with the monthly Social Security benefit checks she received for herself and her daughter in consequence of her first husband's death. Mitchell testified that all of the funds for the construction of the residence came from his paychecks. When asked whether Jordan "put anything into the house," Mitchell replied, "To the best of my knowledge and to my request, no."
Jordan's testimony, in contrast, indicated that the parties were not living in a common law marriage after the divorce. She testified that after their divorce, she and Mitchell were "trying to reconcile." She stated that they were "just staying back and forth." She explained:
 "I was staying at my mother's and staying with him too. We [were] trying to work things out. I wasn't with him full time. . . . I stayed with him off and on [for about three years]. With just my clothes. I didn't move [anything] else in there."
Jordan agreed that she and Mitchell decided to construct a residence on Mitchell's property. She claimed, however, that the money for the construction of the house came from her separate funds, money that she had received in settlement of a lawsuit after a former husband's death, money that she kept in separate certificates of deposit. She testified that she "cashed a CD and put it in another checking account, and it was strictly just that money" that was used to construct the house on Mitchell's property.
The parties broke up in February 1995. According to Mitchell, Jordan left one day, taking with her "all draperies, furniture, dishes, pots, pans . . . everything except for the bed." She began living with another man, and at the time of trial, she had had a child by the other man.
Seeking reimbursement for her improvements to Mitchell's real estate, Jordan filed a declaratory judgment action in 1996, alleging that she had contributed more than $20,000 of her own funds to the construction of the house and that Mitchell had refused to repay her. After a bench trial, the circuit court entered a judgment for Mitchell, holding that Jordan was not entitled to recover for her improvements to the property. The court's order states:
 "Alabama addressed the question of reimbursement for improvements upon the land of another by holding 'under the strict rule of common law, one who did not own real property could never recover for improvements he . . . made thereon.' Gordon v. Tweedy, 74 Ala. 232 (1883). . . . [A]n equitable rule of set-off developed to ameliorate the sometimes harsh results . . . That exception allows compensation for improvements on real property made by a non-owner when the one making the improvements (1) bona fide believed himself to be the owner of the property and (2) was without actual knowledge of any outstanding interest. McCloud v. AmSouth Bank, 540 So.2d 75, 76
(Ala.Civ.App. 1989). It is well settled that 'one who has actual knowledge of an adverse claim to real property is not entitled to compensation for improvements to the property after he has acquired such knowledge.' McCloud, 540 So.2d at 77, citing Smith v. Persons, 285 Ala. 48, 228 So.2d 806
(1968). See also Ellett v. Wade, 47 Ala. 456, 466
(1872) [where the court stated 'I have not been *Page 457 
able to find any case, either in this country or in England, where the court of chancery has assumed jurisdiction to give relief to a complainant, who has made improvements upon land, the legal title to which was in the defendant.' (citations omitted)].
 "Here, [Jordan] knew the title to the property was in [Mitchell], for she put it there. Instead, Jordan claims that she is entitled to compensation for her share of the building expenses she willingly put forth for the construction of the house on the lands of [Mitchell].
 "Courts have used equity jurisdiction in limited circumstances to compensate an individual who has built improvements upon lands of another. The keys to compensation have been mistake, fraud, duress, undue influence, or the like in awarding equitable liens against the property. See, e.g., Benedict v. Little, 288 Ala. 638, 264 So.2d 491, 495 (1972); Lee v. Menefield, 249 Ala. 407, 31 So.2d 581
(1947). 'One who makes improvements on the land of another is not entitled to an equitable lien to secure the payment of the costs of improvements unless the person making the improvements was induced by fraud, duress, undue influence, or mistake of such a character that he is entitled to restitution.' Hewett v. McGaster, 272 Ala. 498, 133 So.2d 189, 191 (1961), citing Taylor v. Shaw, 256 Ala. 467, 473, 55 So.2d 502 (1951); Lee v. Menefield, supra. See also Prince v. Crow, 589 So.2d 161 (Ala. 1991)[A]n equitable lien is appropriate when 'the improver of property, mistakenly and in good faith, believes he owns the property.' Prince, 589 So.2d at 163, citing Manning v. Wingo, 577 So.2d 865, 869 (Ala. 1991); 57 A.L.R.2d 263 ['At common law, emphasis is placed upon the right of the owner of land . . . and it is considered that he is under no obligation, either legal or moral, to pay for improvements. . . . Every occupant makes improvements at peril, even if he acts under a bona fide belief of ownership. 2 Kent Com., 334'].
 "In Manning v. Wingo, the Alabama Supreme Court summarized the law of this state:
 " 'Alabama has limited its equitable rule of recovery to the following situations: (1) where an improver, acting in good faith and under the mistaken belief that he owns the land, makes improvements on the land of another, being induced to do so by 'fraud, duress, undue influence, or mistake of such character that he is entitled to restitution,'; (2) where the true owner of land makes a demand for the rents and profits, a bona fide occupant under a claim of title who has made valuable improvements on the land is entitled to compensation by way of set-off . . .; and (3) where a true owner brings an action to recover possession of land, the defendant may recover for permanent improvements by way of set-off against the value of the use and occupation of the land, upon the defendant's suggestion and proof of adverse possession. . . .'
 "Manning v. Wingo, 577 So.2d at 869. Clearly, none of the three described situations above are even arguably applicable to the set of facts at hand.
 "[Jordan] is not able to claim she mistakenly believed a marriage existed in order to obtain an equitable division of the property as she was collecting Social Security widow's benefits from her first husband's death as an unmarried woman during the years in question. See 20 C.F.R. Parts 404.339, 404.341. This Court will not now allow her to accomplish indirectly that which she cannot do directly, namely obtain an equitable property division pursuant to a divorce.
 "Based on the facts of this case and the laws of this state, this Court can find no basis in law or equity to provide the relief [Jordan] now seeks."
On appeal, Jordan argues that she is entitled to reimbursement for the value of her improvements to Mitchell's property based on one or more of the following theories: constructive trust, money had and received, or restitution in quasi-contract. We reject Jordan's arguments and affirm the trial court's judgment.
Although the remedies proposed by Jordan differ in some respects, they all have *Page 458 
one thing in common: each requires that the recipient of a benefit be unjustly enriched. One is unjustly enriched if his retention of a benefit would be unjust. Restatement ofRestitution: Quasi Contracts and Constructive Trusts § 1, Comment c. (1937). Retention of a benefit is unjust if (1) the donor of the benefit (here, allegedly Jordan) acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit (here, allegedly Mitchell) engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor, or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched. See Restatement ofRestitution: Quasi Contracts and Constructive Trusts § 2 at 16. See generally F. Woodward, The Law of Quasi Contracts (1913).
Referring to the circumstances under which a constructive trust may be impressed, our supreme court explained:
 "Equity may impress a constructive trust on property in favor of one beneficially entitled thereto when another holds title to the property by fraud, commission of wrong, abuse of a confidential relationship, or any other form of unconscionable conduct. Keeton, Law of Trusts, 210 (5th ed. 1949); 4 Pomeroy Equity Jurisprudence, § 1053 (5th ed. 1941); and Walsh on Equity, § 106 (1930)."
American Family Care, Inc. v. Irwin, 571 So.2d 1053, 1058 (Ala. 1990) (emphasis added); see also Beasley v. Mellon FinancialServices, 569 So.2d 389 (Ala. 1990) (court imposed a constructive trust to prevent unjust enrichment when, through mutual mistake of the parties, house was built on wrong two-acre tract). Outlining the circumstances under which an equitable lien might be imposed, the supreme court stated the following in Costanza v. Costanza, 346 So.2d 1133 (Ala. 1977):
 "Our cases make clear that, whether the equitable grounds essential to give the 'equitable lien' principle a field of operation are expressed in terms of 'fraud,' 'unclean hands,' or 'unjust enrichment,' mere passive conduct on the part of the party against whose interest the lien is sought is not sufficient."
346 So.2d at 1136.
In this case, Jordan was not acting under a mistake of fact or in misreliance on a right or duty, and she neither alleged nor proved any unconscionable conduct by Mitchell. Cf. Teele v.Graves, 425 So.2d 1117, 1119 (Ala. 1983) ("the plaintiffs failed to allege any of the traditional bases for establishment of a constructive trust, such as abuse of a confidential relationship, mistake, fraud, or a parol promise to hold in trust").
Section 42, Restatement of Restitution: Quasi Contracts andConstructive Trusts states the following with regard to "Improvements Upon Land or Chattels":
 "(1) Except to the extent that the rule is changed by statute, a person who, in the mistaken belief that he or a third person on whose account he acts is the owner, has caused improvements to be made upon the land of another, is not thereby entitled to restitution from the owner for the value of such improvements; but if his mistake was reasonable, the owner is entitled to obtain judgment in an equitable proceeding or in an action of trespass or other action for the mesne profits only on condition that he makes restitution to the extent that the land has been increased in value by such improvements, whichever is least.
 "(2) A person who, in the mistaken belief that he or a third person on whose account he acts is the owner, adds value to the chattels of another, is not thereby entitled to restitution from the owner for the value of his services or the increased value given to the chattels; but if the owner brings an action for their conversion the added value or the value of the services, whichever is least, is deducted from the damages.
 "(3) A person who has acquired an interest in land or chattels as the result of an agreement with the owner made under a mistake of fact and avoided by the owner is entitled to restitution for the value of services rendered in their preservation or *Page 459 
in making appropriate improvements thereon."
The comment to that section explains:
 "The rule stated is consistent with the common law principle that a person who intermeddles with the property of another assumes the risk as to his right to do so."
It is clear that § 42 of the Restatement gives Jordan no right to relief because she did not act in the mistaken belief that she was an owner of the property on which the improvements were made.
 Equitable Lien
The trial court correctly refused to impose an equitable lien on Mitchell's property. As the court noted, Jordan knew that she had no title to Mitchell's property and she was, therefore, not entitled to an equitable lien for the value of her improvements. See Sanders v. Flournoy, 640 So.2d 933, 939 (Ala. 1994) (improver of property not entitled to value of improvements because he "had no claim of title at all when he began his improvements" and he "had notice of [the titleholder's] adverse claim to the property"); Ex parteMeadows, 598 So.2d 908, 912 (Ala. 1992) (improver of property was not entitled to the value of her improvements because "the undisputed evidence [shows that the improver] could not maintain a bona fide belief that she was the owner of the property"); Prince v. Crow, 589 So.2d 161, 163 (Ala. 1991) (purchasers of property subject to a vendor's lien were not entitled to an equitable lien for their improvements to the property before the vendor's lien was foreclosed because they "were fully aware that their deed was subject to the underlying vendor's lien"); McCloud v. AmSouth Bank, 540 So.2d 75, 76
(Ala.Civ.App. 1989) (purchaser of property at tax sale who had actual notice of owner's right to redeem was not entitled to compensation for improvements made prior to owner's redemption).
Although Jordan was not entitled to an equitable lien based on a mistake as to her ownership of the property, she might have been entitled to relief if she had alleged and proved that Mitchell was guilty of some wrongdoing in inducing her to make the improvements to the property. In Costanza v. Costanza, supra, the Alabama Supreme Court held that a court can impress an equitable lien against property as security for a debt "where the person against whose interest the lien is declared and enforced is guilty of some wrongdoing." 346 So.2d at 1136. Jordan, however, presented no evidence of fraud, coercion, or other unconscionable conduct by Mitchell.
Mitchell testified that he — rather than Jordan — paid for the improvements. The trial court made no finding of fact on that disputed issue. Nevertheless, even if the trial court had found that Jordan paid for the improvements and that Mitchell was aware of the payment, that court still could have concluded that Jordan was not entitled to an equitable lien.
In Prince v. Crow, the improvers argued that they were entitled to restitution because the owners were aware of the improvements. The Court denied relief to the improvers, stating that the owners had not "actively induced" the improvers to make the improvements and that "mere passive conduct [on the part of the owners] was not sufficient to entitle an improver to equitable relief." 589 So.2d at 163.
Jordan also presented no evidence that she paid for improvements to Mitchell's realty in reliance on Mitchell's promise to marry her or to share his property with her. Cf.Glasgo v. Glasgo, 410 N.E.2d 1325 (Ind.App. 1980). In Glasgo, as in the case before us, the parties attempted to reconcile after their divorce. They began living together, and they built a home on property owned by the former husband. The former wife believed that marriage would result from their reconciliation attempts. When she tried to convince her partner that remarriage was a legal necessity, he "rebuffed her efforts in this direction, saying 'what is mine is yours.' " 410 N.E.2d at 1325.
In Glasgo, when the parties broke up, the former wife sued for the value of what she claimed was her share of the improvements to the real estate. The trial court granted the former husband's motion to dismiss for failure to state a claim. The appellate court reversed, holding that the complaint "invoked *Page 460 
both contractual and equitable grounds upon which the court could . . . afford her relief." 410 N.E.2d at 1327. See alsoRobinson v. Robinson, 100 Ill. App.3d 437, 57 Ill.Dec. 532,429 N.E.2d 183 (1981) (improver of property titled in the name of another granted an equitable lien for the value of her improvements based on titleholder's implied promise to deed the realty to the improver).
In the case before us, Jordan's testimony indicates that she did not believe the parties were living in a common law marriage. Furthermore, Jordan presented no evidence that she desired, expected, or relied on a belief, that she and Mitchell would eventually remarry.
As the trial court noted, Jordan's receipt, during the period of her cohabitation with Mitchell, of Social Security widow's benefits from the death of her first husband undercuts any claim that she thought she and Mitchell were married. The record demonstrates that Jordan lost her Social Security benefits when she married Mitchell, and regained them when she and Mitchell divorced. The trial court could infer that Jordan's motive for not remarrying Mitchell was to avoid another loss of Social Security benefits. Under the circumstances, Jordan cannot claim mistake or misreliance entitling her to an equitable lien for her improvements. Section 112 of the Restatement of Restitution reads as follows:
 "A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons."
"[A] mistake of law is not a 'mistake of such a character that the transferor is entitled to restitution.' " Morgan v. Tate,445 So.2d 273, 275 (Ala. 1984) (quoting Cole v. Adkins,358 So.2d 447, 449 (Ala. 1978)).
 Money Had and Received
Like the equitable lien theory of recovery, the remedy of restitution for "money had and received" also requires a mistake on the part of the donor, or wrongful conduct on the part of the recipient of a benefit.
 "Recovery for 'money had and received' is one of the principal categories of restitution. See Davis, Tilley's Alabama Equity, §§ 12-1 and 12-2, p. 277-79 (3d ed. 1994).
 " '[T]he plaintiff has a restitution action for money had and received whenever the defendant holds money [or other pecuniary gain] which in equity and good conscience belongs to the plaintiff or was improperly paid to [or on behalf of] the defendant because of mistake or fraud.
" '. . . .
 " 'If the plaintiff makes a voluntary payment to a third party for the defendant's benefit, there is no right of action in money had and received against the defendant unless [the defendant] has ratified the payment, or initially caused the payment to be made. A claim for money paid is insufficient without proof that the money was paid for the defendant at his request, express or implied, or that the payment was subsequently ratified.'
 "Id., at 277-78, citing Murphree Ins. Agency v. Pinnington, 201 Ala. 500, 78 So. 854 (1918), and Blackwood v. Rutherford, 212 Ala. 630, 103 So. 689
(1925)."
Ex parte AmSouth Mortgage Co., 679 So.2d 251, 255 (Ala. 1996) (emphasis added in AmSouth). Jordan's argument that she is entitled to recover the value of her improvements to Mitchell's realty under the theory of "money had and received" is unavailing.
 Quasi Contract
Quasi contracts are "legal obligations arising, without reference to the assent of the obligor, from the receipt of a benefit the retention of which is unjust, and requiring the obligor to make restitution." F. Woodward, The Law of QuasiContracts § 3 at 4 (1913). As in the other two remedies previously discussed, the retention of a benefit is not deemed to be unjust, for purposes of restitution under quasi contract, unless the donor has conferred the benefit "in misreliance on a right or duty," id., § 9 at 10, or the recipient has engaged in some unconscionable conduct, id. *Page 461 
 "[Q]uasi contracts are in no sense genuine contracts. The contractor's obligation is one that he has voluntarily assumed. He is bound because he has made a promise or undertaking that the law will enforce. And the only difference between an express contract and a contract implied in fact is that in the former the promise or undertaking is verbal, while in the latter it is an implication of the promisor's conduct. But quasi contractual obligations are imposed without reference to the obligor's assent. He is bound not because he has promised to make restitution — it may be that he has explicitly refused to promise, — but because he has received a benefit the retention of which would be inequitable."
F. Woodward, The Law of Quasi Contracts § 4 at 6. The theory of quasi contract affords Jordan no relief.
Constructive Trust
 "A constructive trust 'bears much the same relation to an express trust that a quasi contractual obligation bears to a contract. . . . [A]n obligation is imposed not because of the intention of the parties but to prevent unjust enrichment.' "
3 Scott on Trusts § 462.1 (1939) (quoted in American FamilyCare, Inc. v. Irwin, 571 So.2d 1053, 1058 (Ala. 1990)). "[A] constructive trust will be found when the property has either been acquired by fraud, or where in the absence of fraud it would not be equitable to allow it to be retained by him who holds it." Brothers v. Fuller, 607 So.2d 135, 137 (Ala. 1992) (quoting Brothers v. Moore, 349 So.2d 1107, 1108 (Ala. 1977)). No fraud was alleged or proved in this case.
Jordan argues that the trial court should have imposed a constructive trust on Mitchell's realty because, she says, Mitchell abused a confidential relationship. It would, therefore, be inequitable, Jordan claims, for Mitchell to retain the value of the improvements that Jordan paid for.
 Abuse of a Confidential Relationship
A constructive trust may be impressed upon property when the grantee of the property has abused a confidential relationship with the grantor. Cole v. Adkins, 358 So.2d at 450. See alsoHerston v. Austin, 603 So.2d 976 (Ala. 1992) (when aging and infirm mother transferred property to son in consideration of son's promise to support her, and son appropriated income from the property for himself, court found abuse of a confidential relationship and impressed a constructive trust to prevent unjust enrichment).
A confidential relationship exists when "confidence is reposed by one party in another, and the trust or confidence is accepted under circumstances which show that it was founded on intimate personal and business relations existing between the parties, which gave the one [advantage or] superiority over the other." Kite v. Kite, 444 So.2d 863, 865 (Ala.Civ.App. 1983) (quoting Cannon v. Gilmer, 135 Ala. 302, 304-05, 33 So. 659,659 (1903)). Once a confidential relationship has been shown, "[t]he burden of proving that the transaction was fair and righteous is on the one receiving or acquiring the benefit."Id.
The existence of a confidential relationship is not established merely by proof that the parties had a "close and affectionate" connection. Kelly v. Donaldson, 456 So.2d 30, 34
(Ala. 1984). There is no presumption that a confidential relationship exists between unmarried cohabitants. In reMarriage of Dawley, 17 Cal.3d 342, 355, 131 Cal.Rptr. 3,551 P.2d 323, 331 (1976).
In Edwards v. Miller, 61 Ill. App.3d 1023, 19 Ill.Dec. 82,378 N.E.2d 583 (1978), the Illinois Appellate Court, addressing the issue whether unmarried cohabitants had a confidential relationship, stated:
 "Normally, proof of a confidential or fiduciary relationship requires a showing that one person has reposed trust and confidence in another who thereby gains a resulting influence or superiority over the other. . . . Such a confidential relationship may be moral, social, domestic or even personal; however, where the relationship does not exist as a matter of law (e.g., attorney-client), it must be proved by clear and convincing evidence in order to establish a basis for raising a constructive trust. Relevant facts to be considered include the degree of kinship, as well as disparity in *Page 462 
age and business experience, and the extent to which the allegedly servient party entrusts the handling of his or her business and financial affairs to the other."
61 Ill. App. 3d at 1027, 19 Ill.Dec. at 85, 378 N.E.2d at 586 (citations omitted). In Edwards, the Illinois court concluded that the parties did have a confidential relationship, with the man as the dominant party, because the woman had "relied on [the man] for the support and direction supplied by a head of a household," had permitted the man to handle her money, had gone to work when the man told her a second income was necessary, and had generally entrusted her business and financial affairs to the man's decision-making power. Id.
 "Where a confidential relationship exists, the presumption obtains that the transaction complained of resulted from influence and superiority and the burden rests upon the grantee to show that it was fair, equitable and just and did not proceed from undue influence. In other words, there is a shifting burden in constructive trust cases. First, the party asserting a constructive trust must prove the existence of a confidential relationship; then, the burden of proving the fairness of the transaction shifts to the party alleged to be dominant. The standard of proof for the defendant's rebuttal evidence in such situations is clear and convincing evidence."
Edwards v. Miller, 61 Ill. App. 3d at 1028, 19 Ill.Dec. at 86, 378 N.E.2d at 587 (citations omitted).
The burden of proving that a constructive trust should be impressed is on the complainant. Sims v. Reinert, 285 Ala. 658,235 So.2d 802 (1970). In this case, Jordan failed to prove either that she and Mitchell had a confidential relationship or that, if they had such a relationship, Mitchell abused it. In fact, the evidence established that if either party had the superior position with respect to the handling of financial matters, it was Jordan rather than Mitchell. Cf. Doe v. Roe,323 S.C. 445, 475 S.E.2d 783, 787 (Ct.App. 1996) (grantor presented insufficient evidence that a confidential relationship was abused where, "[i]f either party had the superior position with respect to business acumen, it was [the grantor] rather than [the grantee]").
The trial court did not err by failing to impress a constructive trust on Mitchell's property for the value of Jordan's improvements.
The judgment of the circuit court is affirmed.
AFFIRMED.
MONROE and THOMPSON, JJ., concur.
ROBERTSON, P.J., and YATES, J., concur in the result.