CRAWLEY, Judge.
In 1996, the Circuit Court of Montgomery County placed First National Life Insurance Company (“First National”) in rehabilitation and appointed the chief of the Receivership Division of the Alabama Insurance Department as the receiver of First National (the “Receiver”). The Receiver; American Pioneer Life Insurance Company (“American Pioneer”); and Transamerica Occidental Life Insurance Company entered into a “Reinsurance and Assumption Agreement” (the “Agreement”), whereby American Pioneer assumed certain liabilities of First National and received certain assets. In addition to taking over the administration of the First National policies, American Pioneer purchased First National’s computer system, hired several of its employees, and even leased some of the office space First National had previously occupied. American Pioneer spent several months reviewing the policies assumed under the Agreement and eventually had all the policies assimilated into its system. At that time, American Pioneer discovered that the liabilities it assumed were in excess of the amount it had agreed to assume under the Agreement.
The liabilities assumed by American Pioneer included what are called “reserves.” As explained by American Pioneer in its brief, “reserves” are
“the sum of three liability accounts:
“1. Policy reserves — The excess of the present value of projected future contractual benefits over the present value of the projected future premium payments.
“2. Unearned premium reserves — The portion of the premium paid for periods beyond the date as of which reserves are being calculated.
“3. Claims reserves — The amount expected to be payable with respect to events (deaths or illnesses) which have already occurred on the date as of which the reserve is being computed.”
The Receiver computed the reserves of the life policies assumed by American Pioneer to be $1.4 million. However, after American Pioneer took over the administration of the First National policies, it discovered that 91 policies had been omitted from the computation of the policy reserves. Therefore, as both parties agree, the policy reserves were actually $194,231 more than represented in the Agreement.
American Pioneer also pursued and recovered some $100,396 in claims overpay-ments made by First National. In doing so, it claimed to have been acting pursuant to a request by the Receiver. American Pioneer desired to offset the administrative costs for the recovery against the $100,396 in its possession.
American Pioneer filed a claim with the Receiver for the amount of the reserve deficiency and also requested that it be allowed to offset its costs against the overpayment recovery. The Receiver filed in the circuit court what it titled “Petition for Instructions,” requesting that the circuit court instruct the Receiver as to whether it was obligated to pay American Pioneer all or part of the reserve deficiency and whether it was obligated to allow American Pioneer to offset the overpayment recovery by the administrative expenses American Pioneer claimed to have incurred in the recovery of the overpayment. The Receiver requested a hearing. Amer *326 ican Pioneer filed a memorandum brief in support of its position. The trial court held a hearing, at which it heard arguments of counsel. It then entered an order determining that the Receiver did not owe American Pioneer any part of the reserve deficiency and that American Pioneer was not entitled to offset its expenses against the overpayment recovery in its possession. American Pioneer appealed to the Alabama Supreme Court, which transferred the case to this court pursuant to Ala.Code 1975, § 12-2-7(6).
American Pioneer and the Receiver disagree about the standard of review applicable to this case. American Pioneer argues that the Receiver’s Petition for Instructions was in essence a motion to dismiss the claims it filed against the Receiver, and, for that reason, a Rule 12(b)(6), Ala. R. Civ. P., standard of review should be used to review the trial court’s decision. The Receiver argues that the trial court essentially entered a Rule 56, Ala. R. Civ. P., summary judgment in its favor and that we should review the order as we review a summary judgment. The procedural posture of this case is unlike that of a typical Rule 12(b)(6) dismissal or a Rule 56 summary judgment.
In our opinion, the Petition for Instructions is essentially a complaint for a declaratory judgment. It asks the trial court to determine the duty of each party under the Agreement and to decide whether the claims made by American Pioneer should be considered by the Receiver. The Receiver attached a copy of the Agreement to its petition. The memorandum brief filed by American Pioneer is very much like a typical response to a summary-judgment motion. American Pioneer attached an affidavit in support of its position to its brief. Because the trial court considered items outside the pleadings in deciding the questions presented, we conclude that the trial court’s judgment is more akin to a summary judgment than to a dismissal and we will apply the summary-judgment standard of review to this case.[1]
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c) (emphasis added); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038. “Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). See West, 547 So.2d at 871, and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989), for further discussion of the application of the summary-judgment standard.

The Reserve-Deficiency Question

To determine whether the Receiver is liable to American Pioneer for the reserve deficiency, both parties appear to agree that the focus should be placed on the construction of the Agreement. The only *327 “evidence” necessary to the resolution of the issue, then, is the Agreement itself. The Receiver attached a copy of the Agreement to its Petition for Instructions, and it argued that the Agreement did not provide for any adjustments for a deficiency and that American Pioneer’s only recourse in the event of a deficiency was to refuse to close under the Agreement.
American Pioneer responded with the argument that the Agreement specifically stated that all representations and warranties were to survive the closing and that the reserves were incorrectly computed and, therefore, did not meet the requirement that they be computed in accordance with certain standards. To support the allegation that the reserves were not computed in compliance with the applicable standards, American Pioneer attached the affidavit of its expert, Bradley Leonard, who stated that the omission of the 91 policies from the computation was not in accord with the applicable standards. In addition, American Pioneer attached a certification, performed by Edward R. Shu-gart III at the time the Agreement was executed, which stated that the calculation of the reserves was performed in accordance with the applicable standards.
The circuit court determined that the Agreement provided that American Pioneer’s only recourse in the event of a breach of the warranties contained in the Agreement was to refuse to close. The court specifically noted that the Agreement did not provide any way to make an adjustment in the event of a deficiency. Thus, it concluded, the Receiver did not owe American Pioneer any of the $194,231 reserve deficiency.
American Pioneer appealed. It argues that the trial court erred by ignoring the final provision in the Agreement, which it argues provides it a remedy under a breach-of-warranty or breach-of-contract theory for the recovery of the reserve deficiency. The Receiver argues that the only remedy available to American Pioneer under the Agreement was not to close. Since the closing has long since taken place, argues the Receiver, American Pioneer has no remedy and cannot collect the reserve deficiency.
The pertinent parts of the Agreement are set out below:
“6. Deliveries at Closing
[[Image here]]
“(b) Amount The assets to be transferred shall be equal in value (determined as set forth below) to the sum of the following amounts:
“i. $4,620,000 with respect to the Med Supp Policies. This amount is conclusively calculated as 33% of the gross pending claims and the gross IBNR reserves pertaining to the Med Supp Policies, which are estimated to be $14,000,000, as of September 30, 1996, which reserves are without respect to the Old Transamerica Treaty under which 67% of such liabilities were rein-sured to Transamerica.
“ii. $1,400,000 with respect to the Life Policies. This amount is represented by First National and Receiver to be the total statutory reserves on the Life Policies, consisting of approximately $800,000 for life insurance and annuities and approximately $600,000 for deposit funds.
[[Image here]]
“(c) Assets to be Transferred The Receiver shall transfer the following assets to American Pioneer to cover the sums described above:
[[Image here]]
“ix. If the foregoing assets do not equal the amounts set forth in Section 6(b), American Pioneer shall have no obligation to perform and close under this Agreement.
[[Image here]]
“13. Conditions to Closing
“(a) General. The obligation of each party to consummate the transaction *328 provided for herein is subject to the satisfaction on or prior to the Closing Date of each of the conditions set forth below. Each party may waive its right not to close because of the failure of any condition in writing or by proceeding with the Closing.
“i. Accuracy of Representations and Warranties. Except for changes permitted or contemplated by this Agreement, all representations and warranties of the other parties contained in this Agreement shall be true and correct in all material respects at and as of the Closing Date as if made on and as of such date.
[[Image here]]
[[Image here]]
“23. Survival of Representations. All representations warranties, and agreements made by any party to this Agreement or pursuant hereto shall survive the closing hereunder and any investigation made by or on behalf of any party hereto.”
American Pioneer points out that all provisions of a contract are to be given effect, and it argues that the trial court’s judgment completely ignores provision 23. It argues that provision 23, which states that “[a]ll ... warranties ... survive the closing,” provides it a remedy against the Receiver to collect the reserve deficiency. In general, the “[t]erms of a written instrument should be construed in pan materia and a construction adopted that gives effect to all terms used.” Sullivan, Long & Hagerty v. Southern Elec. Generating Co., 667 So.2d 722, 725 (Ala.1995) (citation omitted). However, although “[inconsistent parts in a contract are to be reconciled, if susceptible of reconciliation, ... if that is not possible, any doubt will be resolved in favor of the first part, considering the instrument as a whole.” Sullivan, Long & Hagerty, 667 So.2d at 725 (citations omitted).
American Pioneer argues that the Agreement clearly spelled out which party assumed the risk of incorrectly calculated reserves. In provision 6(b)i., the reserves of the Medicare-supplement policies are “conclusively calculated,” while, in provision 6(b)ii., the life-policy reserves are “represented ... to be.” Thus, American Pioneer says, the risk of incorrectly calculated reserves of the Medicare-supplement policies is placed with it, while the risk of incorrectly calculated life-policy reserves is placed with First National and the Receiver. Because provision 23 states that representations like the one made in provision 6(b)ii. survive the closing, American Pioneer argues, the breach of that representation is a basis for a breach-of-warranty or breach-of-contract action to recover the reserve deficiency.
Certainly, the Agreement allowed for American Pioneer to escape the obligation to take over First National’s policies by refusing to close if the assets offered to offset the reserve liability were insufficient or if any representations were discovered to be incorrect. However, provision 23 provided that the representations made survived the closing. Although the Receiver argues that the refusal to close was American Pioneer’s only remedy, the existence of provision 23 negates that argument. The wording of provision 23 indicates that the parties recognized the possibility that the representations made would not survive further investigation. By stating that those representations “survive the closing,” the provision intended to create a manner by which one of the parties could remedy a situation like the one here presented. Therefore, we reverse the summary judgment in favor of the Receiver as it relates to the reserve deficiency.

The Overpaymenh-Recovery Question

As discussed previously, American Pioneer succeeded in recovering $100,396 of claims overpayments made by First National. American Pioneer claimed that it had expended certain unspecified amounts in administrative costs in pursuing and *329 securing the recovery at the request of the Receiver, and it sought to set off those expenses against the recovery. The Receiver, however, argued that it had not asked American Pioneer to aid in the recovery of the overpayment and that it was not indebted to American Pioneer for those administrative expenses. The Receiver requested that the trial court disallow the set-off requested by American Pioneer.
The trial court entered a judgment in the Receiver’s favor on the overpayment-recovery question, finding that the Receiver was not indebted to American Pioneer for the administrative expenses and concluding that American Pioneer could not set off those expenses against the overpayment recovery it had in its possession. American Pioneer argues that it had the right to set off those expenses under a quasi-contract theory. See American Family Care, Inc. v. Fox, 642 So.2d 486, 488 (Ala.Civ.App.1994) (stating that “[u]n-der the doctrine of quasi-contract, the law implies a contract, based upon principles of equity, to prevent the unjust enrichment of one who knowingly accepts and retains a benefit provided at the detriment of another, who has a reasonable expectation of compensation”). The Receiver argues the doctrine of quasi-contract is not applicable because, the Receiver says, it was not unjustly enriched by American Pioneer’s action; instead, it argues, American Pioneer did not reasonably expect payment. See Jordan v. Mitchell, 705 So.2d 453, 458 (Ala.Civ.App.1997) (stating that equitable remedies require that the recipient of the benefit conferred be unjustly enriched, and that “unjust” enrichment occurs when the donor of the benefit acts under a mistake of fact or in misreliance on a right or duty or when the recipient has engaged in unconscionable conduct, such as fraud). The Receiver also argues that, under Ala. Code 1975, § 27-32-29, and basic principles of the right of set-off, it and American Pioneer are not mutually indebted, so set-off is not proper. See Head v. Southern Dev. Co., 614 So.2d 1044, 1047 (Ala.1993). On appeal, American Pioneer argues that, if we are reviewing the judgment as a summary judgment, then the Receiver did not meet its prima facie burden as movant in the summary-judgment context and the judgment is due to be reversed. We agree.
The Receiver, as the movant, was required to make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c) (emphasis added); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant does not meet this burden, a summary judgment should not be granted. Ex parte City of Montgomery, 758 So.2d 565 (Ala.1999). The Receiver’s “motion,” its Petition for Instructions, stated the following:
“2. Subsequent to the closing of the Assumption, American Pioneer received on behalf of [First National] overpay-ments on policy clams totalling $100,396.47 through March 1,1999. The Receiver maintains that said overpay-ments were received by mistake and has demanded payment from American Pioneer of said $100,396.47 in claims over-payments, plus interest and any additional claims overpayments received by American Pioneer since March 1, 1999. American Pioneer admits that it has received and is holding the said $100,396.47 in claims overpayments but maintains that it is entitled to offset against said claims overpayments by its said claim for reimbursement for expenses-it has allegedly incurred on behalf of [First National] and/or the Receiver, as follows:
“(i) Audit personnel costs of American Pioneer to recover funds due the Receiver;
“(ii) Computer use, programming and telephone charges incurred by American Pioneer on behalf of the Receiver; and
“(in) Other administrative costs incurred on behalf of [First National] and/or the Receiver.
*330 “The Receiver denies and disputes that (i) [First National] and the Receiver are obligated to American Pioneer to pay any of the above expenses; (ii) the above expenses relate to [First National] or to the Receiver; (iii) the above expenses constitute administrative expenses for the receivership; (iv) that American Pioneer is entitled to offset any portion of the above claims for services and expenses against the Receiver’s claim for overpayment of claims in the amount of $100,396.47.”
In its petition, the Receiver simply denies that it is liable for the alleged administrative expenses American Pioneer has asked to set off against the claims overpayment. The Receiver does not offer any evidence to meet its burden of showing that there is no dispute as to any material fact and that it is entitled to a judgment as a matter of law. In fact, from what appears in the petition, without evidentiary support, the Receiver disputes whether the expenses claimed by American Pioneer are in actuality expenses incurred on behalf of the Receiver. That dispute is a dispute of fact. Although the trial court held that the Receiver was not indebted to American Pioneer for the claimed administrative expenses, that determination is based on the clearly disputed facts put forth by the Receiver. We express no opinion whether American Pioneer is entitled to the offset it requests, but we reverse the summary judgment in favor of the Receiver, on the grounds that the Receiver failed to make a prima facie showing that there was no dispute of material fact and that it was entitled to a judgment as a matter of law.
REVERSED AND REMANDED.
ROBERTSON, P.J., and THOMPSON, J., concur.
YATES and MONROE, JJ.; concur in the result.

. American Pioneer incorporated the record from a prior appeal into the record in this case. Neither the Petition for Instructions nor American Pioneer’s brief in response references any of the evidentiary material contained in the incorporated record. Therefore, because the trial court did not consider those materials in entering the summary judgment, we have not considered any materials contained in the incorporated record in our review. See Ex parte City of Montgomery, 758 So.2d 565 (Ala.1999) ("It is the task of [the appellate] court to view the evidence that was before the trial court when that court entered the summary judgment.’’).